[S.F. No. 22072.    In Bank.    Feb. 23, 1966.]

DR. WILLIAM F. STANTON et al., Plaintiffs and Appellants, v. DR. GLENN DUMKE, as Chancellor of the State Colleges of California, et al., Defendants and Respondents.

Thorne, Stanton, Clopton, Herz & Stanek, William F. Stanton and John E. Thorne for Plaintiffs and Appellants.

Marshall W. Krause and Albert M. Bendich as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Elizabeth Palmer and Jan Stevens, Deputy Attorneys General, for Defendants and Respondents.

BURKE, J.—In this mandamus proceeding plaintiffs seek to compel defendants[1] to restore them to the faculty of San Jose State College as of September 1, 1962, and to recover salary from that date. The trial court sustained defendants' demurrer without leave to amend as to both plaintiffs, and also granted defendants' motion for summary judgment against plaintiff Hutchinson. Judgments were entered accordingly, and plaintiffs appeal. As will appear, we have concluded that the rulings of the trial court were correct, and that the judgments appealed from should be affirmed.

In ruling on the sufficiency of the petition for mandate as against demurrer, the court will assume to be true all material and issuable facts properly pleaded (*Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]), disregarding conclusions of law and allegations contrary to facts of which judicial notice may be taken (*Watson* v. *Los Altos School Dist.* (1957) 149 Cal.App.2d 768, 771-772 [308 P.2d 872]; *Griffin* v. *County of Colusa* (1941) 44 Cal.

---

[1] Defendants are the Chancellor and the Trustees of the State Colleges of California, and the President of San Jose State College.

App.2d 915, 918 [113 P.2d 270]), and considering such judicially noticed facts as though pleaded in the petition. (*Watson* v. *Los Altos School Dist., supra.*)

When the petition is so viewed it appears that plaintiffs were appointed (i.e., employed) as probationary teachers at San Jose State College on a year to year basis for the three school years prior to the year ending June 30, 1962; they would have acquired tenure if employed for a fourth year by contract; on April 5, 1962, plaintiffs were notified in writing by the college president that they would not be so employed. Plaintiffs charge in their petition for the writ that failure to rehire for the fourth year was based upon nonacademic reasons, such as their participation in uncovering an asserted agreement of state college presidents to exclude certain students from California's state colleges, and their activities on behalf of a teachers union.

Prior to July 1, 1961, the Education Code provided in pertinent part (in § 24202)[2] that "the members of the teaching staff of each state college . . . shall be appointed by the Director of Education, subject to the approval of the State Board of Education, only upon the recommendation of the president of the college."

In 1961 section 24202 was repealed. Section 22604, added in 1960, specifies that "The Trustees of the California State Colleges shall succeed to the powers, duties and functions with respect to the management, administration and control of the state colleges heretofore vested in the State Board of Education or in the Director of Education. . . . The provisions . . . relating to the transfer of the powers, duties, and functions with respect to the management, administration and control of the state colleges shall become operative on July 1, 1961."

Section 22607, also added in 1960, states among other things that "All academic and administrative positions filled by the trustees on and after July 1, 1961, shall be filled by appointment made solely at the discretion of the trustees."

While the president's favorable recommendation thus was no longer essential to the appointment of a probationary academic employee after July 1, 1961, the Administrative Code continued to require that in the event a state college president should determine not to recommend reappointment of a probationary academic employee for the succeeding academic

---

[2] All section references are to the Education Code unless otherwise stated.

year, he should so notify such employee not later than April 15 of the academic year for which the employee is then employed. (Cal. Admin. Code, tit. 5, § 43302, formerly § 975.27.) Plaintiffs admit that the notice given on April 5, 1962, "was in accord with the statutory requirements."

█ Further, the Education Code contemplates that appointments made after July 1, 1961, although to be made "solely at the discretion of the trustees" (§ 22607), should be made pursuant to rules adopted by the trustees. Section 24201, as amended in 1961, states (in its first paragraph) that "The trustees shall provide by rule for the government of their *appointees* and employees . . . including, but not limited to, *appointment*, . . . terms, . . . *tenure*, . . . dismissal, demotion, suspension and reinstatement."[3] (Italics added.)

█ In order to provide the law to be applied to the *tenure* rights and benefits of academic employees during the period from July 1, 1961, to July 1, 1962 (the date on which the rules adopted by the trustees would become effective pursuant to the second paragraph of section 24201, see fn. 3, *ante*), the Legislature enacted sections 24320 through 24324 (otherwise known as Article 3) and (§ 24321) expressly made them effective only until July 1, 1962.[4] (Stats. 1961, ch. 1828, p. 3903, § 32.5.)

---

[3]Section 24201 further provides (in its second paragraph) that "The rules adopted by the trustees relating to *tenure*, layoff, dismissal, demotion, suspension, and reinstatement of academic . . . employees shall . . . become effective on July 1, 1962, with respect to employees who are academic teaching . . . employees. . . ." (Italics added.) It is noted that this provision does not by its terms refer to "appointees" or "appointment."

[4]These "interim" sections provided in pertinent part:

Section 24320: "It is the intent of the Legislature that academic teaching and administrative employees of state colleges shall retain until July 1, 1962, the *tenure rights* and *benefits* provided for *probationary* and *permanent* employees under the law in effect prior to [July 1, 1961] . . . [and] that the tenure rights and benefits of such employees will be governed by rules adopted by the trustees on and after July 1, 1962." (Italics added.)

Section 24322: "As used in this article . . . (c) 'Tenure rights and benefits' includes the rights granted by . . . law ["as it read on June 30, 1961"] to a *probationary* state college employee during his probation *and* to a *permanent* state college employee upon his becoming permanent in the manner provided by such law, with respect to *duration of the probation,* becoming permanent upon reappointment for a fourth successive academic year, the right to continued employment at the particular state college unless dismissed for cause or laid off, the causes for dismissal or demotion, and the right to appeal therefrom and rights resulting from such appeal." (Italics added.)

From such sections it appears that during the interim period between July 1, 1961, and July 1, 1962, probationary teachers (as were petitioners here) *retained* any rights which had accrued to them prior to July 1, 1961, but nowhere does it appear that any *new* rights were bestowed upon them. Thus plaintiffs retained credit for their three years as probationary teachers, which would ripen into permanent tenure provided they were employed for the fourth year by contract. Further, although after July 1, 1961, the favorable recommendation of the college president was not a statutory prerequisite to appointment of a probationary academic employee (§ 22607), as it had been prior thereto (former § 24202), plaintiffs were given no new right to require that during the interim period the trustees appoint them for the fourth year or independently exercise a discretion with respect to such appointment in the *absence* of the president's favorable recommendation. Section 22607, quoted hereinabove, declares affirmatively that appointments shall be "made solely at the discretion of the trustees," but does not specify or suggest that the trustees must exercise their discretion with respect to each decision *not* to reappoint a probationary teacher.

Further, it appears that following the enactment of section 22607 transferring appointment power to the trustees as of July 1, 1961, the trustees by formal regulation continued in effect during the crucial period here involved the same system of appointments and retentions used by the State Board of Education. (Former Cal. Admin. Code, tit. 5, § 42701, subd. (a).) This rule provided that "Appointments to academic . . . positions in the state colleges shall be made by the Trustees upon recommendation of the Chancellor. The president of each college shall recommend to the Chancellor the appointment of all academic . . . employees."[5] Moreover, when plaintiffs were notified by the president of the college in April 1962 that they would not be reappointed, the trustees were expressly authorized to delegate any power

---

Section 24323: "Notwithstanding any other provision of law to the contrary, state college employees who are transferred to the Trustees . . . on July 1, 1961, shall retain their . . . *tenure rights* and benefits accumulated by them at the time of the transfer and shall retain such *tenure rights* and benefits as may attach, *under* the *law* in effect on *June 30, 1961*, to the positions which they held at the time of transfer. . . ." (Italics added.)

Section 24324: [Permits reassignment of certain employees; not here material.]

[5]The trustees also readopted the notice provision as section 43302 of title 5 of the Administrative Code.

vested in them "to any officer, employee, or committee as the trustees may designate." (Ed. Code, § 23605, Stats. 1961, ch. 1796; see also § 24305.)[6]

Before the transfer of the appointment power to the trustees, appointments were made by the Director of Education on recommendation of the college president subject to approval by the State Board of Education. After such transfer, appointments were made for terms of one academic year by the trustees on recommendation of the president submitted through the chancellor; if the president determined not to recommend reappointment for a succeeding year the probationary teacher's name was not submitted, but the president was required to comply with the regulations concerning notice to him. This was the procedure followed here, and no error is shown.

Plaintiffs and amici curiae attempt to inject a constitutional issue based upon plaintiffs' allegations as to the reasons they claim they were not employed for the fourth (tenure) year.[7] Accepting plaintiffs' contention that a person cannot properly be barred or removed from public employment in disregard of his constitutional rights (see *Fort* v. *Civil Service Com.* (1964) 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 292 P.2d 385]) plaintiffs still fail to make their case here. Plaintiffs could ask for no more than an opportunity to present their charges of arbitrary denial of such rights at a fairly conducted hearing at which the record supports the decision of the employing authority. Since that hearing was accorded to plaintiffs here, and the record supports the decision, we need not further explore, or adjudicate, the claimed constitutional issue.

Plaintiffs referred in their petition to, and lodged with the trial court, the 316-page transcript of the first hearing before the chancellor,[8] and refer to some four pages thereof as "evi-

---

[6]Section 24305: "The trustees shall adopt rules prescribing the form, time and method of notice of . . . intention not to recommend reappointment of an academic employee for the succeeding year to any such employee not having permanent status." (Stats. 1961, ch. 1828.)

[7]Plaintiffs allege that failure to employ them for the fourth year "was based upon non academic reasons such as [their] participation in uncovering the secret 'gentlemen's agreement' of State College Presidents under the control of [defendants], to exclude southern sit-in students from California's state colleges, and other activities such as [their] membership in and activities on behalf of" a teacher's labor union.

[8]A full administrative hearing before the Chancellor of the State Colleges was accorded on the failure to rehire plaintiffs for a fourth year. At the request of the trustees, the chancellor had prepared interim

dence'' of the ''anti-union bias'' of the college president. The testimony which appears on the four pages demonstrates on the contrary the care taken by the president to guard *against* any ''anti-union bias'' on the part of the college committees and departments which in routine administrative procedure made the original reports and recommendations as to retention or nonretention of probationary employees. Since it is made a part of their petition, we have read the entire transcript of the hearing, which reflects lengthy questioning of the president by or on behalf of plaintiffs; the record fully supports the chancellor's conclusion that neither union activities nor participation in uncovering the alleged secret agreement (fn. 7, *ante*) contributed to the decision not to employ plaintiffs for the fourth year.

The president testified that the decision on retention or nonretention of probationary employees originates at the department level, based on ''1) Improvement and efficiency

---

grievance rules and issued them on August 3, 1961, to provide ''procedures for handling grievances . . . pending the establishment by the [trustees] . . . of regular rules and procedures.''

The rules state that ''This procedure is intended as a means through which members of the faculty . . . may obtain consideration of personnel grievances over which the Trustees have jurisdiction and for which redress is not provided in current law or personnel rules . . . ,'' including a grievance relating to ''appointment, reappointment, tenure decision . . . .'' These interim rules further provided that if a grievance was not resolved after discussion with the employee's ''immediate superior,'' it could be submitted to each successive level of administrative authority, with a right of appeal from the decision of the president to either a faculty senate or counsel and thereafter to the chancellor, and with an open hearing on the appeal to the chancellor unless the appealing party requested otherwise.

In May 1961 the president had sent each plaintiff a letter stating that ''On the recommendation of [various specifically named college department heads, chairmen, and deans]. I am writing to inform you that it is not our plan to continue your services beyond the Spring Commencement, 1962. This, of course, is subject to review during the 1961-62 academic year.'' It appears that pursuant to recommendations of the American Association of University Professors such letters were sent to probationary teachers during their *second* probationary year, in order to provide them an opportunity to attempt to remove the cause of dissatisfaction with their services before the final decision and notice that they would not be appointed for the critical *fourth* year which gives tenure. The April 5, 1962, notices to plaintiffs state that they are likewise based upon the recommendation of named college department heads, chairmen and deans.

In October 1961 plaintiffs requested a grievance hearing before the chancellor based upon this letter, and hearings were held in July and August 1962; the chancellor also took into consideration the April 1962 notices to plaintiffs that they would not be appointed for the 1962-63 year. The chancellor's conclusion was that ''it is apparent that the decision of the College was not the product of factors not properly involved in decisions of this character. . . . [T]he College's decision is sustained.''

of teaching ability; and 2) The value of the employee to the college; and 3) The present and possible future contributions to the field of learning," and then progresses through three other levels ("area," "division," and "Dean of the Colleges,") before the final recommendation to the president. Further, that the "usual reasons for not reemploying . . . are based upon teaching ability, attentiveness to duties, and professional growth and conduct." Nothing in the record would warrant a conclusion that the decision not to reemploy plaintiffs turned on other than the customary academic and professional reasons. ■ No cause of action is stated when, as in this case, an administrative hearing has been accorded, the record of which demonstrates that the charges of impropriety are illusory. Consequently there is no merit in the suggestion that an opportunity should be given to amend to attempt to state a cause of action.

■ The summary judgment against plaintiff Hutchinson was granted on the ground that his grievance had become moot. Again no error appears. It is undisputed that by a letter dated June 25, 1962, Hutchinson resigned his position at San Jose State College "as of the end of the 1961-62 academic year." He is thus in no position to complain of failure to rehire him for the ensuing year or to maintain a mandamus proceeding in an attempt to compel such hiring. The summary judgment procedure is applicable to mandamus actions. (See *Taliaferro* v. *Coakley* (1960) 186 Cal.App.2d 258, 260 [9 Cal.Rptr. 529].)

Both of the judgments appealed from are affirmed. Plaintiffs also attempt to appeal from the nonappealable "Memorandum Decision of the Court"; such purported appeal is dismissed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.

Appellants' petition for a rehearing was denied March 22, 1966.