[S. F. No. 22352. In Bank. Jan. 4, 1967.]

GERALD ROSENFIELD, Plaintiff and Appellant, v. JAMES MALCOLM, as County Health Officer, etc., Defendant and Respondent.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

560

Marshall W. Krause and James R. McCall for Plaintiff and Appellant.

J. F. Coakley, District Attorney, Richard J. Moore, Assistant District Attorney, and Thomas J. Fennone, Deputy District Attorney, for Defendant and Respondent.

TOBRINER, J.—Like *Bagley* v. *Washington Township Hospital Dist., ante,* p. 499 [55 Cal.Rptr. 401, 421 P.2d 409], the present case requires us to consider the constitutionality of restraints imposed upon the political activities of public employees. In the present case, however, unlike *Bagley,* the employing agency does not even attempt to demonstrate that the restrictions imposed upon plaintiff's political activities were necessary to maintain its efficiency and integrity but boldly asserts that it may dismiss for any reason whatsoever

an employee who has not attained protected civil service status. For the reasons set forth at length in the *Bagley* opinion, we conclude that the right asserted by the agency cannot be confirmed.

Plaintiff, Dr. Gerald Rosenfield, appeals from a judgment of dismissal entered pursuant to an order of the trial court sustaining defendant's demurrer to his petition for a writ of mandate to compel his reinstatement with back pay. In his amended petition Dr. Rosenfield stated that his employment commenced on September 1, 1964, when defendant, the Alameda County Health Officer, "provisionally appointed" him to the post of assistant district health officer. Dr. Rosenfield further alleged that defendant thereafter advised him that his membership in an organization known as the "Ad Hoc Committee to End Discrimination" "was incompatible" with his continued occupancy of his post.

The petition describes the committee as a "lawful, voluntary, unincorporated association devoted to the eradication of racial discrimination." Defendant does not challenge this characterization of the committee or attempt to prove that participation in its activities would be incompatible with the satisfactory performance of the duties of an assistant district health officer.

The petition further states that, although Dr. Rosenfield indicated his willingness to cease his participation in the activities of the committee and to change his membership to an inactive status, he declined to resign entirely from the organization. Thereupon, according to the petition, defendant discharged plaintiff from his post "for the express reason that [plaintiff] refused to resign from membership in the Ad Hoc Committee to End Discrimination."

In the *Bagley* opinion we reviewed the cases which bear on the power of a governmental agency to restrict the political activities of its employees. On the basis of that analysis we held that, "a governmental agency which would require a waiver of constitutional rights as a condition of public employment must demonstrate: (1) that the political restraints rationally relate to the enhancement of the public service, (2) that the benefits which the public gains by the restraints outweigh the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available." (*Bagley* v. *Washington Township Hospital Dist., ante,* at pp. 501-502.)

In the present case defendant makes no attempt to sustain

such a burden. Rather, he calls attention to the fact that Dr. Rosenfield had not yet attained protected civil service status at the time of his dismissal and hence, under the applicable rules of the Alameda County Civil Service Commission, remained subject to dismissal without notice or hearing. From this fact defendant asks us to conclude that Dr. Rosenfield could be dismissed for any reason whatsoever, including his superior's disapproval of his political activities. Alternatively, defendant urges that even if Dr. Rosenfield could not properly be dismissed for his political activities, the reasons which motivated that dismissal are not subject to judicial scrutiny. Finally, and somewhat inconsistently with the foregoing contentions, defendant raises the claim that plaintiff failed to exhaust available administrative remedies.

Defendant's first contention that he could dismiss plaintiff without regard to plaintiff's constitutional rights cannot stand. The mere fact that plaintiff had not yet attained the security of a protected civil service position does not mean that he could be summarily dismissed for political activities displeasing to his superior. The ultimate boundaries of plaintiff's rights are set not by the rules of the Alameda County Civil Service Commission but by the Constitution of the United States. When defendant urges that the absence of any statutory restriction on his freedom to dismiss plaintiff vested him with the right to dismiss plaintiff for any reason whatsoever, he reverts to the hoary fallacy that government possesses an unbounded power to condition public employment upon a waiver of constitutional rights. (See *Bagley* v. *Washington Township Hospital Dist., ante,* p. 499 [55 Cal.Rptr. 401, 421 P.2d 409].)

Nor can we accept defendant's alternative contention that even if plaintiff's dismissal for political activities was unconstitutional, this court cannot properly inquire into the considerations which in fact led to that dismissal. In support of this contention defendant argues that the discretion which governmental agencies must exercise in determining whether to retain provisional employees would be impaired by judicial review, even if such review were confined to cases disclosing violations of constitutional right. Defendant thus asserts a broad power to shield from judicial scrutiny administrative actions which, he presently concedes, may involve violations of the state and federal Constitutions.

Unquestionably, a broad discretion reposes in governmental agencies to determine which provisional employees they will retain. Considerations of comity and administrative effi-

ciency counsel the courts to refrain from any attempt to substitute their own judgment for that of the responsible officials. Nevertheless, when the record in a given case clearly establishes that unconstitutional conditions have been imposed upon the retention of public employment, we cannot permit the deference which we would otherwise accord administrative determinations to bar us from discharging our obligation to protect overriding constitutional rights.

In the present case plaintiff's petition alleged that the sole ground for his dismissal was his superior's disapproval of his membership in the Ad Hoc Committee to End Discrimination, an activity not shown to derogate from the efficient performance of his duties as assistant district health officer. Defendant demurred to that petition and has neither sought to challenge plaintiff's allegation regarding the reason for his dismissal nor undertaken to indicate why membership in the designated committee might properly be made a basis for discharge.

■■■ "In ruling on the sufficiency of the petition for mandate as against demurrer, the court will assume to be true all material and issuable facts properly pleaded. . . ." (*Stanton* v. *Dumke* (1966) 64 Cal.2d 199, 201 [49 Cal.Rptr. 380, 411 P.2d 108]; *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263].) Accordingly, we must assume for present purposes that defendant is asserting a broad power to discharge his subordinates whenever their involvement in political or social activities becomes displeasing to him, whether or not that involvement threatens in any way to impair the efficiency or subvert the integrity of the agency which he directs. Under such circumstances we cannot accept defendant's contention that we are bound by his discretion.

Our recent decision in *Stanton* v. *Dumke, supra,* 64 Cal.2d 199, clearly vindicates the power of this court to review the dismissal of provisional or probationary employees in cases which indicate a violation of constitutional right. In the *Stanton* case certain former state college teachers urged that their dismissal " 'was based upon non academic reasons such as [their] participation in uncovering the secret "gentlemen's agreement" of State College Presidents . . . to exclude southern sit-in students from California's state colleges, and other activities such as [their] membership in and activities on behalf of' a teacher's labor union." (64 Cal.2d 199, 205, fn. 7.)

If their petition had stated no more, it would have been invulnerable to demurrer; however, the plaintiffs annexed to

their petition the 316-page transcript of the hearing which the state college chancellor had held on their complaints. "Since it is made a part of their petition," we declared, "we have read the entire transcript of the hearing, which reflects lengthy questioning . . . by or on behalf of plaintiffs . . . ." (*Stanton* v. *Dumke, supra,* 64 Cal.2d 199, 206.) Our review of that transcript persuaded us that, "[T]he record fully supports the chancellor's conclusion that neither union activities nor participation in uncovering the alleged secret agreement . . . contributed to the decision not to employ plaintiffs . . . ." (64 Cal.2d 199 at p. 206.) Accordingly, we affirmed the judgment of dismissal, holding that: "No cause of action is stated when, as in this case, an administrative hearing has been accorded, the record of which demonstrates that the charges of impropriety are illusory." (64 Cal.2d 199 at p. 207.)

Since, in the present case, plaintiff received neither notice nor hearing, we have no transcript to cast doubt on the truth of his unchallenged allegations. In the *Stanton* case we stated that, "Plaintiffs could ask for no more than an opportunity to present their charges of arbitrary denial of . . . rights at a fairly conducted hearing at which the record supports the decision of the employing authority." (*Stanton* v. *Dumke, supra,* 64 Cal.2d 199, 205.) The present plaintiff was afforded no such opportunity.

Moreover, the fact that this court undertook to review the transcript of the hearing in the *Stanton* case and assess the weight of the recorded evidence should conclusively establish, contrary to the contention of the present defendant, that this court has the power and duty to review the dismissal of a provisional or probationary employee in circumstances which suggest a constitutional violation.

Turning to defendant's final contention, we note that at oral argument before this court his counsel urged that relief should be denied because plaintiff failed to exhaust certain administrative remedies which, counsel asserted, were available to him under sections 42 and 44 of the Alameda County Charter. The record and briefs contain no previous reference to these sections as a possible source of remedies to a wrongfully dismissed employee.

Even more significantly, however, the suggestion that plaintiff had failed to exhaust administrative remedies totally conflicts with the position which defendant had theretofore taken. Until oral argument here, defendant had insisted that

the applicable statutes and regulations gave a provisional employee, such as Dr. Rosenfield, *no* procedural rights and that such an employee could *therefore* be dismissed for any reason whatsoever. The following chronology of the positions taken by defendant demonstrates both their inconsistency and insubstantiality.

In demurring to Dr. Rosenfield's initial petition, defendant declared that the petition was "ambiguous" and "uncertain" in failing to specify whether Dr. Rosenfield's appointment was probationary or provisional. In the memorandum of points and authorities annexed to that demurrer, defendant urged that if Dr. Rosenfield's appointment was probationary, then rule 1824 of the Rules of the Alameda County Civil Service Commission entitled him to a hearing, which he had not sought. If, however, his appointment was only provisional, then, defendant contended, he enjoyed *no* procedural rights and could be dismissed for any reason whatsoever.

Similarly, in the memorandum of points and authorities submitted with its motion to strike, defendant again took the position that if Dr. Rosenfield's appointment was probationary he had failed to exhaust his administrative remedies, but if he was only a provisional employee, he possessed no such remedies and was, therefore, "subject to dismissal at any time without cause." In neither memorandum did defendant suggest that any section of the county charter might afford remedies to a wrongfully dismissed employee, probationary or provisional.

Thereafter, and prior to the ruling of the trial court on defendant's demurrer, Dr. Rosenfield amended his petition to specify that his appointment had been provisional. From that point until oral argument in this court defendant adhered to the view that Dr. Rosenfield could be dismissed for any reason whatsoever *because* he enjoyed no administrative remedies.

Radically changing his position at oral argument, defendant's counsel urged that Dr. Rosenfield should be denied relief because he had failed to take advantage of certain administrative remedies made available to him by sections 42 and 44 of the Alameda County Charter. Yet examination of the cited portions of the county charter reveals that they do not afford the remedies claimed. Section 44 contains a simple declaration that, "No person in the classified civil service or seeking admission thereto, shall be appointed, reduced or removed, or in any way favored or discriminated against because of his political or religious opinions or affili-

ations.'' Although this section undoubtedly states a declared goal of the county it does not even purport to extend remedies to a public employee aggrieved by official conduct inconsistent with that objective.

Nor does section 42 undertake to supply such remedies. In its only relevant portion it declares: ''The [Civil Service] Commission . . . shall have the power to investigate the conduct and operation of any department or board . . . .'' This general investigative power does not rise to the dignity of an ''administrative remedy'' which a party aggrieved by departmental action must exhaust before approaching the courts. Our courts have repeatedly held that the mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an ''administrative remedy'' unless the statute or regulation under which that power is exercised establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties.

Several recent cases affirm this principle. In *Henry George School of Social Science* v. *San Diego Unified School Dist.* (1960) 183 Cal.App.2d 82 [6 Cal.Rptr. 661], an organization sought to enjoin a school board from enforcing rental charges in excess of those authorized by state law. The court rejected the board's claim that plaintiff had failed to exhaust its ''administrative remedies,'' noting that: '' [N]o authority has been cited, and we have found none, that applies the doctrine of exhaustion of administrative remedy to any case where no specific remedy is provided, permitted or authorized by statute or by rule of the administrative agency involved. In the case here at bar, there is no statutory or rule provision as to just what a citizen must do in order to secure revocation of an ultra vires order of a school board.'' (183 Cal.App.2d at p. 85.)

The court acknowledged that the school board retained ''general continuing power over its own current operative rules and orders'' and thus possessed the power to afford plaintiff the relief sought. Nevertheless, the court concluded that this general supervisory power did not establish an ''administrative remedy'' since there was no ''rule, regulation or statute which directly provides, authorizes, or even suggests that an aggrieved person should or may file petition with a governing board for readjustment or revision in any rental or rate fixing problem . . . .'' (*Henry George School of Social Science* v. *San Diego Unified School Dist., supra,* 183 Cal.App.2d 82, 85.) The court distinguished the cases cited by

the defendant, noting that in each such case, "[S]pecific statutory provision had been made for petitions, notices and hearings . . . ." (183 Cal.App.2d at p. 86.) The court also quoted with approval the holding in *Bernstein* v. *Smutz* (1947) 83 Cal.App.2d 108, 115 [188 P.2d 48], that: "In all of the cases in this state in which it has been held that a party had not exhausted his administrative remedies and therefore was not entitled to relief by the court, provision was made in the governing law for a proceeding of some nature before an administrative body which the party had not pursued." (183 Cal.App.2d at p. 86; see also *Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267, 273 [148 P.2d 645].)

A recent Court of Appeal decision reflects even more exacting standards for the particularity and detail required of claimed "administrative remedies." (*Martino* v. *Concord Community Hospital Dist.* (1965) 233 Cal.App.2d 51 [43 Cal.Rptr. 255].) That case involved a community hospital which had "deferred" the application of a physician for admission to practice. The hospital urged that judicial relief was unavailable to challenge its decision because the physician had failed to take an appeal to the executive committee of the hospital's medical staff as authorized by an applicable regulation.

The court ruled that this regulation established no "administrative remedy" since it failed to "set forth any procedure for the hearing or determination of the appeal and states only that it shall be 'considered'. . . ." (*Martino* v. *Concord Community Hospital Dist., supra,* 233 Cal.App.2d 51, 57.) The court noted that the regulation was "devoid of any mention of the procedure to be followed in reviewing an appeal from a deferral decision and merely enumerates in extremely broad language the powers and duties of the executive committee . . . ." "It thus appears," the court concluded, "that a physician whose application . . . has been deferred has no assurance that he will be afforded a hearing or any of the other procedural safeguards which the bylaws of the hospital district guarantee to a physician whose application has been rejected or denied. He is entitled only to file a request for appeal which will be disposed of in an unspecified manner by the executive committee of the medical staff. This nebulous procedure cannot be deemed an adequate procedural remedy, hence appellant's failure to pursue the same may not be held a bar to the commencement of this action." (233 Cal.App.2d at p. 57.)

In the present case, the section of the county charter which defendant now invokes does not even authorize the taking of an appeal. As previously noted, it does no more than confirm that the county civil service commission enjoys a general power to inquire into the operation of county departments. The section does not so much as suggest that an individual aggrieved by illegal departmental action may invoke that power on his own behalf; it provides no procedural machinery which would enable him to do so. Indeed, it is not even clear that the commission can correct an abuse which, in the exercise of its ''investigative'' power, it may happen to uncover. Accordingly, we conclude that the failure of Dr. Rosenfield to pursue the novel and entirely speculative ''remedy'' of instituting an investigation into the operations of his department does not foreclose the adjudication of the present case.[1]

We reverse the judgment of dismissal entered pursuant to the order of the trial court sustaining defendant's demurrer and remand the cause for proceedings consistent with this opinion.

Traynor, C. J., Peters, J., Mosk, J., Burke, J., and Peek, J.,* concurred.

McComb, J., dissented.

---

[1]Not only is defendant's invocation of sections 42 and 44 both untimely and unmeritorious; defendant has sought to foster the impression that it relied upon these sections from the outset. In its supplementary brief, filed after oral argument, defendant makes the following attempt to meet the charge that its reliance upon the county charter is untimely: ''It is, of course, a matter of record that the argument appears in due and proper fashion before this court in a more condensed form (C.T. pp. 13-14). . . . [L]ines 20-24 incl. on page 14 of said Transcript clearly point out that regardless of the status of the appellant's employment, he could not state facts sufficient to maintain a cause of action in that he had not pursued any administrative remedy available to him. Section 44 of the Alameda County Charter is broad and inclusive. It applies to all —probationary or provisional employees—and its remedy is available to anyone so situated, as the respondent urged below.''

We have already noted that the first recorded mention of section 44 of the county charter occurred in oral argument before this court. Moreover, examination of the portions of the clerk's transcript to which defendant now refers us reveals no trace of any contention that a provisional employee enjoys administrative remedies for a wrongful dismissal. On the contrary, the cited portions set forth defendant's argument that a provisional employee, unlike one with probationary status, has no procedural rights at all.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.