[Civ. No. 13214. Fourth Dist., Div. Two. Mar. 29, 1974.]

CONCERNED CITIZENS OF PALM DESERT, INC., et al.,
Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF RIVERSIDE COUNTY,
Defendant and Respondent;
EAGLE DEVELOPMENT COMPANY,
Real Party in Interest and Respondent.

258

**COUNSEL**

Young, Henrie & McCarthy and John C. McCarthy for Plaintiffs and Appellants.

Ray T. Sullivan, Jr., County Counsel, Gerald J. Geerlings and Tilden L. Brooks, Deputy County Counsel, for Defendant and Respondent.

Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., Henry S. Zangwill, Carol G. Hammett and Richard G. Duncan, Jr., for Real Party in Interest and Respondent.

**OPINION**

**TAMURA J.**—Plaintiffs appeal from a judgment denying their petition for administrative mandamus to review and set aside actions of defendant Riverside County granting real party in interest (Eagle Development Company, hereafter Eagle) a conditional use permit and variance for the construction of a multiple residential development on a parcel of land in Palm Desert and approving a zone change of the property from restricted commercial to multiple residential.[1] The attack upon the county's actions was based upon alleged noncompliance with the California Environmental Quality Act of 1970 (CEQA; Pub. Resources Code, § 21000 et seq.).

Plaintiffs filed their petition for writ of mandate on November 30, 1972, attacking the validity of county approvals of four separate and independent private land development projects in the Palm Desert area, including the Eagle project. The county's demurrer on grounds of failure to state a cause of action and lack of jurisdiction was sustained with leave to amend. On January 3, 1973, plaintiffs filed an amended petition alleging in substance as follows: Eagle owns an interest in a 30-acre parcel in Palm Desert; on March 14, 1972, the county approved Eagle's application for a conditional use permit and variance authorizing construction of a multiple residential development on the property; on October 30, 1972, the county approved a zone change of the property from restricted commercial to multiple residential; the county's actions were invalid for, among other reasons,

---

[1]Plaintiff Concerned Citizens of Palm Desert, Inc., is a nonprofit organization whose membership is composed of residents and property owners in the unincorporated territory of Riverside County known as Palm Desert. Plaintiff Bradley Walker is a resident and homeowner in Palm Desert suing as an individual and as a representative of the class of persons similarly situated.

failure to prepare and consider an environmental impact report (EIR) as required by the CEQA.

The county and Eagle moved for a summary judgment.[2] The motions were supported by the records of the proceeding before the county planning commission and the board of supervisors and by declarations of the following persons: A member of the county planning commission staff, a deputy clerk of the county board of supervisors, an officer of Eagle, and the former attorney for Eagle. Plaintiffs filed no counter affidavits.

The pertinent facts were as follows:

Eagle owned an interest in a 29-plus-acre parcel of land in Palm Desert zoned restricted commercial. On December 14, 1971, Eagle filed applications with the county planning commission for a conditional use permit for a 248-unit residential development on the property and for a variance from the existing parking requirement of three parking spaces per unit to two and a half spaces per unit.

The county planning commission held noticed public hearings on the applications. Notice of the hearings was given by posting the property and by mailing notices to all residents within 300 feet and to other interested persons and groups, including plaintiff Concerned Citizens of Palm Desert, Inc. On February 23, 1972, the commission rendered its decision granting the applications. The commission found that the proposed use would not be detrimental to the community and, with respect to the request for a variance from the parking requirement, hardship had been established in that the existing parking requirement was no longer "consistent with the purposes of the [county] ordinance" and was in the process of being amended.[3]

On March 8, 1972, the planning commission, following a hearing, recommended approval of Eagle's tentative tract map subject to certain conditions. On March 21, 1972, the board of supervisors approved the tentative tract map in accordance with the planning commission recommendation.

---

[2]The summary judgment procedure is applicable to mandamus proceedings. (*Stanton* v. *Dumke*, 64 Cal.2d 199, 207 [49 Cal.Rptr. 380, 411 P.2d 108]; *Taliaferro* v. *Coakley*, 186 Cal.App.2d 258, 260 [9 Cal.Rptr. 529].) A defendant may move for summary judgment without filing an answer. (*Orange County Air Pollution Control Dist.* v. *Superior Court*, 27 Cal.App.3d 109, 112-113 [103 Cal.Rptr. 410]; *Taliaferro* v. *Coakley, supra*, 186 Cal.App.2d 258, 260-261.)

[3]The planning commission reported its action to the county board of supervisors. On March 14, 1972, the board noted that no appeal had been taken from the planning commission decision and ordered the report filed.

On July 10, 1972, Eagle filed an application with the county planning commission for a zone change from restricted commercial to multiple residential. Following a noticed public hearing, the planning commission recommended that the property be rezoned to R-2 5,000 (multiple family dwellings, 5,000 square feet lot per unit). On October 31, 1972, the board of supervisors approved the planning commission recommendation and on November 28, 1972, adopted an ordinance rezoning the property.[4]

The declaration of Eagle's vice president states that in reliance upon the actions of the county, Eagle incurred liabilities in excess of $700,000 for land acquisition and for engineering, architectural and administrative expenses.[5]

The motion for summary judgment was granted and a judgment for defendant and real party in interest was duly entered.[6] The judgment recites that plaintiffs had been guilty of laches and ordered that the petition for writ of mandate be denied and summary judgment be entered in favor of county and Eagle. Plaintiffs appeal from the judgment.[7]

Although in their petition for writ of mandate plaintiffs challenged the validity of the conditional use permit, the variance and the rezoning action, on this appeal their attack is focused entirely on the rezoning action. Plaintiffs urge that there was no evidence that they were guilty of laches in con-

---

[4]Following the Supreme Court decision in *Friends of Mammoth* v. *Board of Supervisors* (Sept. 21, 1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], Eagle employed experts to prepare an EIR on the proposed development and filed the report with the county planning commission on December 1, 1972. Eagle does not suggest, however, that this constituted compliance with the CEQA.

[5]The declaration states that the land was purchased for $391,300 cash plus a $173,200 trust deed and that approximately $147,000 was expended for engineering, architectural and administrative services.

[6]Although the document signed by the judge is entitled "ORDER DENYING PLAINTIFFS' REQUEST FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER, WRIT OF MANDAMUS, PRELIMINARY INJUNCTION AND THE GRANTING OF SUMMARY JUDGMENT IN FAVOR OF EAGLE DEVELOPMENT COMPANY, REAL PARTY IN INTEREST," it is in fact a judgment. It provides in pertinent part: "IT IS HEREBY ORDERED that the said application by the plaintiffs for the issuance of a Temporary Restraining Order, Writ of Mandamus, and Application for Preliminary Injunction be and is hereby denied, and Summary Judgment is hereby entered in favor of EAGLE DEVELOPMENT COMPANY, real party in interest, and against plaintiffs." The document is sufficient as a judgment, in that it shows distinctly that the issues have been fully and finally adjudicated. (See 4 Witkin, Cal. Procedure (2d ed. 1971) p. 3201.)

[7]Plaintiffs petitioned this court for an order staying the effect of the challenged administrative actions of the county pending this appeal. We denied the petition (4 Civ. 13214, July 26, 1973) and the Supreme Court denied a hearing.

testing the rezoning decision. Additionally, in anticipation of defendant's argument that the ruling of the court below is sustainable on grounds (1) that plaintiffs failed to exhaust their administrative remedies and (2) that the actions sought to be reviewed and set aside were validated by the provisions of an urgency measure, effective December 5, 1972, amending the CEQA (Stats. 1972, ch. 1154, p. 2277, § 16), plaintiffs contend that there were no administrative remedies available to one aggrieved by the rezoning action and that the pendency of plaintiff's action rendered the validating statute inoperative.

Eagle's position is that its right to proceed with its project flows from the conditional use permit and variance and not from the zone change. On this premise Eagle contends that plaintiffs were precluded from attacking the validity of the project because: (a) Plaintiffs failed to exhaust their administrative remedies; (b) the action was barred by the statute of limitations or laches; and (c) the project was validated by the 1972 urgency amendment to the CEQA.

## I

### CONDITIONAL USE PERMIT AND VARIANCE

As to the conditional use permit and variance, the uncontradicted evidence shows that plaintiffs' action was barred by the statute of limitations and laches.

In *Friends of Mammoth v. Board of Supervisors, supra,* 8 Cal.3d 247, the Supreme Court was urged to make its decision prospective only in order to avoid hardship to private developers who, in good faith and in reliance upon governmental approval of their projects without an environmental impact report, had commenced construction and made financial commitments. In rejecting the request, the Supreme Court observed that very few private projects approved during the period between the effective date of the CEQA (Nov. 23, 1970) and the date of the *Friends of Mammoth* decision (Sept. 21, 1972) would be subject to attack for failure to comply with the act because they would be protected either by the statute of limitations or by invocation of the doctrine of laches. (8 Cal.3d 247, 272.)

The record in the instant case reveals that the attack upon the conditional use permit and variance was barred by the statute of limitations. The conditional use permit and variance were granted by the planning commission on February 23, 1972. No appeal was taken to the board of supervisors as authorized by the county zoning ordinance. Government

Code section 65907 provides a 180-day statute of limitations for the maintenance of any action or proceeding to attack, review, set aside or annul a decision granting a conditional use permit or variance.[8] The instant proceeding was not commenced until November 30, 1972, more than three months beyond the 180-day statutory period. Plaintiffs' attack upon the conditional use permit and variance was, therefore, barred by Government Code section 65907.

Furthermore, in the order denying the petition for writ of mandate, the trial court found that plaintiffs were guilty of laches. That finding is amply supported by the evidence. The record reveals, without contradiction, that during the nine-month interval between the granting of the conditional use permit and variance and the commencement of these proceedings, Eagle incurred financial liabilities in excess of $700,000 in reliance upon the various actions of the county now being contested. ■ A plaintiff who has unduly delayed seeking equitable relief to the prejudice of a defendant may be barred by the doctrine of laches. (*Gerhard* v. *Stephens,* 68 Cal.2d 864, 904 [69 Cal.Rptr. 612, 442 P.2d 692].) ■ Administrative mandamus is a proceeding in which equitable principles are applicable (*Dowell* v. *Superior Court,* 47 Cal.2d 483, 486 [304 P.2d 1009]; *Dare* v. *Bd. of Medical Examiners,* 21 Cal.2d 790, 795 [136 P.2d 304]) and in which the defense of laches may be invoked (see *Conti* v. *Board of Civil Service Commissioners,* 1 Cal.3d 351, 357, fn. 3 [82 Cal.Rptr. 337, 461 P.2d 617]). Laches is ordinarily a question of fact (*McClung* v. *Saito,* 4 Cal.App.3d 143, 152 [84 Cal.Rptr. 44]; *Rouse* v. *Underwood,* 242 Cal. App.2d 316, 323 [51 Cal.Rptr. 437]), and the trial court exercises considerable discretion in deciding whether the defense should be sustained (see *Conti* v. *Board of Civil Service Commissioners, supra,* 1 Cal.3d 351, 357; *Rouse* v. *Underwood, supra,* 242 Cal.App.2d 316, 323). In the case at bench the trial court did not abuse its discretion in sustaining the de-

---

[8]Government Code section 65907 provides: "Any action or proceeding to attack, review, set aside, void or annul any decision of matters listed in Sections 65901 and 65903 [regarding conditional use permits and appeals from zoning decisions], or concerning any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced within 180 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters of the calendar of the court, criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings excepted."

fense. There was substantial evidence of unreasonable delay plus prejudice to Eagle resulting from the delay.[9]

■ Insofar as the attack upon the conditional use permit and variance is concerned, the trial court's order may also be sustained on the ground that plaintiffs' failure to exhaust their administrative remedies deprived the court of jurisdiction to review those actions. Exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review of a zoning action. (*Igna* v. *City of Baldwin Park,* 9 Cal.App.3d 909, 914 [88 Cal.Rptr. 581]; *Smith* v. *City of Duarte,* 228 Cal.App.2d 267, 269 [39 Cal.Rptr. 524]; *Dunham* v. *City of Westminster,* 202 Cal.App.2d 245, 249-250 [20 Cal.Rptr. 772]. See *United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26]; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715]; Reed, *Exhaustion of Administrative Remedies in California* (1968) 56 Cal.L.Rev. 1061, 1074.) The Riverside County Zoning Ordinance (§ 18.26) provides that planning commission approval of an application for a conditional use permit or variance is final unless, within seven days, an appeal is taken to the board of supervisors or the board orders the matter transferred to it for further proceedings. According to the record in the case at bench, neither event occurred with respect to the planning commission action on the application for the conditional use permit and variance. The administrative record shows that plaintiff Concerned Citizens of Palm Desert, Inc. was given notice of the planning commission hearings and that a representative from that organization was present at those hearings. Yet plaintiffs failed to avail themselves of the right of administrative appeal.

■ In view of the foregoing, Eagle was entitled to proceed with its project to the extent authorized by the conditional use permit, and subject to its terms and conditions, without rezoning. Under the provisions of the Riverside County Zoning Ordinance, a planned residential development is permitted in a restricted commercial zone under a conditional use permit. Rezoning is not required. The granting of a conditional use permit does not constitute rezoning and such action does not require observance of rezoning procedures. (*Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 622 [213 P.2d 492]; *Stoddard* v. *Edelman,* 4 Cal.App.3d 544, 553 [84 Cal.Rptr. 443]; *Case* v. *City of Los Angeles,* 218 Cal.App.2d 36, 40 [32 Cal.Rptr. 271]; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 363 [203 P.2d

---

[9]Though not included in plaintiff's petition, an attack upon the approval of the tentative tract map would also have been subject to the defense of laches. The map was approved by the board of supervisors on March 21, 1972, some eight months before the commencement of these proceedings.

37].) A valid conditional use permit for a planned residential development was issued to Eagle in accordance with the procedures prescribed by the county ordinance.

The question remains whether plaintiffs were nevertheless entitled to prosecute the mandate proceeding as it relates to the rezoning action. We turn to that question.

## II

### ZONE CHANGES

As noted earlier in this opinion, plaintiffs' brief is focused entirely on their right to challenge the validity of the zone change. They contend that since rezoning was an action of the board of supervisors and since the mandate proceeding was instituted two days after the adoption of the rezoning ordinance, neither the doctrine of exhaustion of administrative remedies nor the equitable defense of laches could be invoked against the attack upon the validity of the zone change.

Eagle's response is twofold. It contends: (1) That the project was validated by the 1972 urgency amendment to the CEQA and (2) that rezoning was a purely ministerial act which conferred no substantive rights on Eagle and that therefore a judicial determination that the zone change was void would be an idle judicial act.

We agree that to the extent it was authorized by the conditional use permit and variance and by the approval of the tentative tract map, Eagle's project was validated by Public Resources Code section 21169 (added to the CEQA by the 1972 urgency amendment to the act). The section provides in pertinent part: "Any *project* defined in subdivision (c) of Section 21065 [private project] undertaken, carried out or *approved* on or before the effective date of this section *and the issuance* by any public agency of any lease, permit, license, certificate or other *entitlement for use* executed or issued on or before the effective date of this section notwithstanding a failure to comply with this division, if otherwise legal and valid, is hereby confirmed, validated and declared legally effective. . . ." (Italics supplied.) Since the issuance of the conditional use permit and variance and the approval of the tentative tract map occurred long before the effective date of the section (Dec. 5, 1972), those actions were shielded from attack for noncompliance with the CEQA.

The pendency of plaintiffs' mandate proceedings prior to the effective date of section 21169 did not deprive those governmental actions of the

protection of the section. Although section 21170[10] (also adopted as part of the 1972 urgency amendment to the CEQA) carves out an exception to section 21169 where a judicial proceeding contesting the legality of a project was pending, in the case at bench the attack upon the issuance of the conditional use permit, variance and approval of the tentative tract map was, as we have seen, barred by the statute of limitations and laches. The pendency of such a judicial proceeding cannot deprive a project and its approval of the protection of section 21169. A contrary decision would undercut the rationale on which the Supreme Court based its decision not to make *Friends of Mammoth* prospective only. As has been noted, the Supreme Court discounted the hardship argument by pointing out that most projects approved before *Friends of Mammoth* would be protected from attack for noncompliance with the CEQA by the statute of limitations or the doctrine of laches. In providing for an exception to the validating provisions of section 21169 where a judicial proceeding contesting the legality of a project is pending on the effective date of the section, the Legislature could not have intended to deprive projects protected from attack by the statute of limitations or laches from the benefit of section 21169.

 The zone change, however, was not validated by section 21169. As we have seen, plaintiffs instituted the mandate proceeding on November 30, 1972, two days after the board of supervisors adopted the rezoning ordinance. Neither the doctrine of exhaustion of administrative remedies nor that of laches barred plaintiffs' attack upon the zone change. The county ordinance provides no administrative remedy to one claiming to be aggrieved by an action of the board of supervisors rezoning property. As to laches, obviously there was no undue delay in seeking judicial review of the validity of the zone change.

---

[10]Public Resources Code section 21170 provides: "(a) Section 21169 shall not operate to confirm, validate or give legal effect to any project the legality of which was being contested in a judicial proceeding in which proceeding the pleadings, prior to the effective date of this section, alleged facts constituting a cause of action for, or raised the issue of, a violation of this division and which was pending and undetermined on the effective date of this section; provided, however, that Section 21169 shall operate to confirm, validate or give legal effect to any project to which this subdivision applies if, prior to the commencement of judicial proceedings and in good faith and in reliance upon the issuance by a public agency of any lease, permit, license, certificate or other entitlement for use, substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred.

"(b) Section 21169 shall not operate to confirm, validate or give legal effect to any project which had been determined in any judicial proceeding, on or before the effective date of this section to be illegal, void or ineffective because of noncompliance with this division."

The county and Eagle suggest that the zone change was also validated by section 21169 because a general demurrer was sustained to the initial petition filed on November 30, 1972, and the amended petition was not filed until January 3, 1973. In view of the order sustaining the demurrer to the initial petition, it is urged that no valid petition was on file prior to the effective date of the section (Dec. 5, 1972) either alleging a valid cause of action or raising a valid issue under the CEQA. The contention is nonmeritorious. The fact that a general demurrer was sustained (with leave to amend) to the initial petition did not deprive plaintiffs of the benefit of section 21170. The section refers to a judicial proceeding in which the pleadings "alleged facts constituting a cause of action for, *or* raised the issue of, a violation of this division. . . ." (Italics supplied.) Although the initial pleading may have been defective, it nevertheless raised the issue of a violation of the CEQA within the meaning of the section. Furthermore, the amended petition related back to the original petition in the circumstances here presented. For the purpose of the statute of limitations, an amended complaint will be deemed filed as of the date of the original complaint, provided recovery is sought in both pleadings on the "same general set of facts." (*Wilson* v. *Bittick,* 63 Cal.2d 30, 36-38 [45 Cal.Rptr. 31, 403 P.2d 159]; *Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681]; see *Grudt* v. *City of Los Angeles,* 2 Cal.3d 575, 583-585 [86 Cal.Rptr. 465, 468 P.2d 825].) The same principle should govern in the case at bench. The relief sought in both the initial petition and the amended petition was based upon the same general set of facts.

█ Thus, the ultimate issue is whether plaintiffs should be permitted to go forward with the mandate proceeding for the limited purpose of testing the validity of the zone change. Plaintiffs contend that a zone change is a discretionary governmental project which must be preceded by the preparation and consideration of an EIR and that they have the right to have the zone change in question invalidated for lack of an EIR prior to the adoption of the rezoning ordinance.

While an EIR must be prepared and considered before a public agency becomes committed to a discretionary project (Pub. Resources Code, § 21080), in the case at bench Eagle, as we have noted, is entitled to proceed with the project authorized by the conditional use permit, variance, and tentative tract map approval. In these circumstances, to permit plaintiffs to maintain the mandate proceeding for the sole purpose of testing the validity of the zone change would be of no practical benefit to plaintiffs, unless rezoning effected a substantial change in Eagle's project or

constituted a substantial change in the circumstances under which the project was to be undertaken, which change raises environmental issues not presented by the project as approved by the prior county actions. (See Pub. Resources Code, § 21166.)[11] ■ Administrative mandamus is subject to the established principles, requirements and limitations governing the general law of mandamus. (*Grant* v. *Board of Medical Examiners,* 232 Cal.App.2d 820, 826 [43 Cal.Rptr. 270].) Its issuance is discretionary, not a matter of right. (*Dare* v. *Bd. of Medical Examiners, supra,* 21 Cal.2d 790, 796-797; *Berry* v. *Coronado Board of Education,* 238 Cal. App.2d 391, 397 [47 Cal.Rptr. 727].) It will issue only where necessary to protect a substantial right and only upon a showing that some substantial damage will be suffered by the petitioner if the writ is denied. (*Parker* v. *Bowron,* 40 Cal.2d 344, 351 [254 P.2d 6]; *Ault* v. *Council of City of San Rafael,* 17 Cal.2d 415, 417 [110 P.2d 379]; *Grant* v. *Board of Medical Examiners, supra,* 232 Cal.App.2d 820, 827; *Silva* v. *City of Cypress,* 204 Cal.App.2d 374, 376 [22 Cal.Rptr. 453].) The writ will not issue to enforce a mere abstract right without any substantial or practical benefit to petitioner. (*Spotton* v. *Superior Court,* 177 Cal. 719, 720 [171 P. 801]; *Gay* v. *Torrance,* 145 Cal. 144, 147 [78 P. 540]; *Grant* v. *Board of Medical Examiners, supra,* 232 Cal.App.2d 820, 827; *Clementine* v. *Board of Civ. Ser. Commrs.,* 47 Cal.App.2d 112, 114 [117 P.2d 369].)

■ In its brief, Eagle states that the zone change affected the identical property that was the subject of the conditional use permit and variance, that it was a pure "ministerial" act that in no way affected the rights of Eagle, that the sole motivation for the zone change was for "administrative convenience" and not to grant any substantial rights to Eagle. Those assertions, if correct, would have justified the trial court in denying the petition for writ of mandate in its entirety, including the attack upon rezoning. However, Eagle's assertions as to the purpose and effect of the zone change are made without citation of evidentiary support for them. We find nothing in the declarations in support of the motion for summary judgment or the administrative record establishing those facts. Although

---

[11]The 1972 urgency amendment to the CEQA added Public Resources Code section 21166, which provides: "When an environmental impact report has been prepared for a project pursuant to this division, no subsequent environmental impact report shall be required unless either of the following occurs:

"(a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

"(b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report."

plaintiffs did not file counteraffidavits or declarations, such failure did not relieve the moving parties (Eagle and county) of the burden of establishing the evidentiary facts of every element necessary to entitle them to a judgment. (*Vesely* v. *Sager,* 5 Cal.3d 153, 169-170 [95 Cal.Rptr. 623, 486 P.2d 151]; *Brewer* v. *Reliable Automotive Co.,* 240 Cal.App.2d 173, 175 [49 Cal.Rptr. 498]; *American Society of Composers, Authors & Publishers* v. *Superior Court,* 207 Cal.App.2d 676, 687 [24 Cal.Rptr. 772].)

In the foregoing circumstances, the court erred in denying the petition insofar as it sought to challenge the validity of the zone change. Plaintiffs should be afforded the opportunity to show, if they can, that a writ to set aside the zone change is necessary to protect a substantial right and that they will suffer some substantial damage if the writ is denied.

The judgment is affirmed insofar as it denies the petition for writ of mandate to review and set aside the conditional use permit and variance, and is reversed insofar as the petition seeks review and annulment of the zone change.

Judgment affirmed in part and reversed in part.

Kerrigan, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied April 18, 1974, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied June 26, 1974.