[Civ. No. 24266.   Second Dist., Div. Three.   Feb. 25, 1960.]

J. T. JENKINS COMPANY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

Holbrook, Tarr & O'Neill and W. Sumner Holbrook, Jr., for Appellant.

Harold W. Kennedy, County Counsel, and Alfred Charles DeFlon, Deputy County Counsel, for Respondents.

FORD, J.—The plaintiff appeals from a judgment in an action brought by it to recover taxes paid under protest.

The contention of the plaintiff is that, pursuant to section 1060 of the Revenue and Taxation Code,[1] certain debts owed by the plaintiff should have been deducted from the amount of debts owed to the plaintiff in determining the value of the solvent credits of the plaintiff which were subject to taxation. Under section 114 of the Revenue and Taxation Code, debts are defined as being "unsecured liabilities of the same class as is subject to taxation owing by the assessee to bona fide residents of this State, or to persons doing business in this State." The question presented in this case is whether the claimed deductions fall within "the same class as is subject to taxation." The solution of that problem depends upon the proper construction to be given the words "arising out of the sale of goods or services" which were added by the Legislature in 1957 to section 112 of the Revenue and Taxa-

[1] Section 1060, Revenue and Taxation Code, is as follows: "A deduction of debts shall be made from the assessed value of solvent credits if a statement under oath showing the amount of the debts in the detail required by the assessor or, if the solvent credits are State assessed property, by the board is filed with the property statement."
Section 602, Revenue and Taxation Code, provides in part that the assessment roll shall show "[t]he actual value of solvent credits, after legal deductions for debts."

tion Code. (Stats. 1957, ch. 537, p. 1586, § 1.) That section is now as follows:

" 'Credits' mean solvent debts owing to the assessee, and any interest therein, arising out of the sale of goods or services, unsecured by mortgage, trust deed, contract or other obligation where land is pledged as security.

"It includes contracts for the sale of personal property by which title is vested in the vendor until payment of the purchase price specified in the contracts."

Before the board of supervisors sitting as the county board of equalization (Rev. & Tax. Code, § 119), there was no dispute as to the facts. Appellant is the sole distributor and agent for the states of California, Arizona, New Mexico and Nevada for Kenworth motor trucks. The solvent credits assessment made to appellant in the 1958 assessment roll of Los Angeles County was in the amount of $3,854,300 and was based solely upon certain conditional sales contracts executed between it and purchasers of such trucks. On the first Monday of March, 1958, all of such contracts had been assigned and transferred to the Bank of America National Trust and Savings Association. The contracts and the sales transactions out of which they arose were all in accordance with the general practice of appellant. The transactions with the bank were pursuant to a financing arrangement embodied in an agreement between the bank and appellant. In addition, appellant executed a general pledge agreement in favor of the bank.

The Kenworth motor truck is a heavy-duty diesel truck manufactured, except for demonstration models, upon special specifications agreed upon between appellant and the ultimate purchaser before the particular truck is manufactured. The average time elapsing between the placing of the original order and the delivery of the truck is approximately 60 days.

A typical example of a sales transaction is as follows: About 60 days prior to January 24, 1958, appellant received an order for a specially designed truck from a buyer, the buyer being herein designated as Ellis. Appellant then placed an order with Kenworth Motor Truck Company, Seattle, Washington, for the manufacture of that truck. On January 24, 1958, the manufacturer issued its invoice to appellant for the truck. The invoice contained a notation to the effect that the truck was for resale to Ellis. Upon receipt of the invoice, appellant sent to Ellis its invoice in the amount of $16,553.68 for the truck. Thereupon, appellant transmitted the invoice

from Kenworth Motor Truck Company, together with a trust receipt covering the truck, to the bank above-named at its Ninth and Market Streets Branch in San Francisco. On the same date, appellant drew a check against its "special reserve account" maintained at that branch of the bank and transmitted it to Kenworth Motor Truck Company. That check was in the sum of $242,713.07, which included the cost to appellant of the Ellis truck in the amount of $14,406.32. Upon receipt of the invoice and trust receipt, as set forth above, together with the accompanying letter of transmittal, the bank caused to be deposited in appellant's "special reserve account" the sum of $242,713.07, of which amount the sum of $14,406.32 was on account of the Ellis truck. Thereafter appellant, through its agent, took delivery of the truck being sold to Ellis at the manufacturer's place of business in Seattle. The truck was driven to appellant's premises in Los Angeles County. In addition to the payment of a certain amount in cash, Ellis executed in favor of appellant a conditional sales contract. That contract was in the amount of $14,070.60, exclusive of the "finance charge." Issuance of the certificate of ownership ("pink slip") for the truck was requested from the Department of Motor Vehicles with Ellis designated as the registered owner and appellant as the legal owner. The conditional sales contract and a pledge thereof executed by appellant were transmitted to the bank at its branch at Vernon, California, as was the "pink slip" which was endorsed in blank by appellant. Upon receipt of such documents, the bank made an "open account" loan to appellant in the amount of $14,070.60, pursuant to the agreement between appellant and the bank heretofore mentioned. The amount of that loan was credited to the general account of the appellant at that branch of the bank. Appellant then drew its check upon that account in an amount sufficient to repay the advance which the bank had credited to appellant's "special reserve account" in San Francisco.

The total amount as of the first Monday in March, 1958, which had been advanced to appellant on account of the assignment and pledge of contracts, of which the Ellis transaction is typical, was $2,760,389.[2] The position of appellant before the county board of equalization was summarized as follows: "That by reason of the aforesaid, both the aforesaid solvent credits in the amount of $3,854,300, and such open

---

[2]No portion thereof was represented by a promissory note or notes.

account liability of petitioner to the Bank of America in the amount of $2,760,389, were solvent credits or debts, respectively, owing to or from the assessee 'arising out of the sale of goods' and therefore, as to the credits, assessable to assessee under the provisions of Revenue & Taxation Code Section 112, as amended in 1957, and, as to the obligation owing to such Bank in the sum of $2,760,389, was a debt 'arising out of the sale of goods' and therefore, under the provisions of Section 114 of the Revenue & Taxation Code, 'of the same class' as the taxable solvent credits, and as to which, by reason of the provisions of Article XIII, Section 1, of the California Constitution, and Sections 112, 114 and 602 of the Revenue & Taxation Code, petitioner was entitled to deduction or offset, thereby reducing the net taxable solvent credits from the assessed sum of $3,854,300 to the amount of $1,093,900.''

On this appeal, appellant contends that ''the proper meaning of the phrase 'arising out of the sale of goods or services' . . . is such credits as 'spring, originate, flow, issue, emanate, proceed, stem' or, in general, 'were incident to' such 'sale.' '' (See *Hays* v. *Bank of America,* 71 Cal.App.2d 301, 306 [162 P.2d 679].) Respondents, on the other hand, take the position that ''a debt arises out of a sale only when it is one of the particular legal relations constituting the sale—that is when the debt is an integral part of the sale.''

There are no precedents which give a ready answer to the problem presented. ■ However, guidance is found in *Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, at page 645 [335 P.2d 672] : ''The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*California Toll Bridge Authority* v. *Kuchel,* 40 Cal.2d 43, 53 [251 P.2d 4] ; *County of Alameda* v. *Kuchel,* 32 Cal.2d 193, 199 [195 P.2d 17] ; *Dickey* v. *Raisin Proration Zone No. 1,* 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324] ; 82 C.J.S. Statutes, § 321, p. 560; 45 Cal.Jur.2d Statutes, § 126, p. 634.) ■ Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' (*Stafford* v. *Los Angeles etc. Retirement Board,* 42 Cal.2d 795, 799 [270 P.2d 12].) ■ If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (*People* v.

*Western Air Lines, Inc.*, 42 Cal.2d 621, 638 [268 P.2d 723].)
Such purpose will not be sacrificed to a literal construction of any part of the act. (*People* v. *Ventura Refining Co.*, 204 Cal. 286, 292 [268 P. 347, 283 P. 60]; *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28]; 45 Cal. Jur.2d, Statutes, § 130, p. 637.)'' (See also *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526].)

The application of the principles just stated leads to the conclusion that appellant cannot prevail on this appeal.

In adding the words ''arising out of the sale of goods or services'' to section 112 of the Revenue and Taxation Code, it was clearly the intention of the Legislature to narrow the class of solvent credits which would be subject to property tax. Of necessity, the legislative change narrowed the concept of debts under section 114 of the same code because debts are there defined as ''unsecured liabilities of the same class as is subject to taxation.'' The conditional sales contracts owned by appellant clearly arose out of the sale of goods, namely, the trucks. As to that no question is raised and none could be under the express wording of section 112. But what was owed by appellant to the bank was of a different nature. The bank, for instance, did not succeed to any property of Kenworth Motor Truck Company in the nature of solvent credits which arose out of a sale to appellant, such as an open book account or a conditional sales contract. What it held was property in the nature of an obligation owed to it by appellant arising under what has herein been called an ''open account'' loan. While such a loan arrangement has a closer relationship to sales of particular trucks than would exist in the case of a single large advance by way of loan to enable appellant to carry on its business, since the ''open account'' loan to appellant in this case was increased or decreased in amount from time to time pursuant to pledges of particular conditional sales contracts or payments thereunder, still the amount owed to the bank cannot be said to have been a debt ''arising out of the sale of goods'' within the intent of sections 112 and 114. This becomes apparent if, for purposes of clarity of thought, we assume a case where the lender is a private individual rather than a bank.[3] The solvent credits so owned by such an individual would not seem to fall within the class of credits which is subject to taxation under the

---

[3]See sections 23181 and 23182, Revenue and Taxation Code, as to the method of taxing banks.

present law any more than would the commercial bank account of a merchant which has its source in the proceeds of sales of goods made by him. (See *Home Escrow Service Corp.* v. *County of Los Angeles,* 155 Cal.App.2d 335, 338 [317 P.2d 1021].)

Even if the construction for which appellant contends be considered to be a possible one, the interpretation which leads to the more reasonable result must be accepted. (*Metropolitan Water Dist.* v. *Adams,* 32 Cal.2d 620, 630 [197 P.2d 543].) The determination reached by the trial court is consonant with the intent of the Legislature.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 20, 1960.