[Civ. No. 21974. First Dist., Div. Two. Mar. 17, 1965.]

JOHN S. MARTINO, Plaintiff and Appellant, v. CONCORD COMMUNITY HOSPITAL DISTRICT et al., Defendants and Respondents.

52

[redacted]

[redacted]

[redacted]

Gonick, Schmid & Bernstein and Harry Gonick for Plaintiff and Appellant.

Bray, Baldwin, Ogden and Egan, Anderson & Geary, A. F. Bray, Jr., and Robert L. Anderson for Defendants and Respondents.

SHOEMAKER, P. J.—Plaintiff John Martino, a physician licensed to practice in the State of California, appeals from an adverse judgment in an action brought by him against the defendants Concord Community Hospital District, the Board of Directors of said district, the individual members of said board, the Credentials Committee and Medical Staff of Concord Community Hospital, and one Richard Irvine, who was allegedly a member of both the credentials committee and medical staff, in which he sought a writ of mandate compelling defendants to act upon his application for appointment to the medical staff, and enjoining them from denying his application upon the ground that he refused to take an examination covering phases of medicine and surgery.

The defendants' defense to the action was that plaintiff had never completed his application nor exhausted the administrative remedies provided for in the rules, regulations and bylaws of the hospital district and medical staff.

The facts are undisputed. On November 7, 1962, plaintiff filed his application for appointment to the medical staff of Concord Community Hospital. Said application was referred to the credentials committee of the medical staff for investigation and recommendation in accordance with the bylaws of the hospital district and medical staff. Plaintiff's application indicated that he had not been a member of any hospital staff subsequent to 1954. The credentials committee informed him by letter of February 19, 1963, that it would be unable to determine his qualifications and rule on his application until he had submitted a record of his more recent medical and surgical experience and had taken an examination of "those phases of medicine and surgery which we require our Staff members to be qualified in." This latter requirement was apparently predicated upon article III, section 5, subsection C, of the bylaws of the medical staff, which authorized the credentials committee "to conduct a hearing at which the applicant shall be examined orally and in writing, be given such tests, oral and written, as the Credentials Committee shall in its discretion determine." Plaintiff submitted the requested experience record on March 30, 1963, but refused to take the examination. On September 10, 1963, the medical staff, upon the recommendation of the credentials committee, voted to defer plaintiff's application without prejudice for the reason that he had refused to take the examination. On September 25, 1963, the board of directors of the hospital district, upon the recommendation of the medical staff, voted to defer plaintiff's application without prejudice on the ground that it was incomplete. Plaintiff was notified of the board's action by letter of October 18, 1963.

Pursuant to article VIII, section 3, of the bylaws of the hospital district, a duly licensed physician and surgeon whose application for membership to the medical staff has been "rejected or denied" may appeal and obtain a hearing before the board of directors of the hospital district. Subsection (a) of section 3 provides for the selection by the board of a qualified attorney to act as a hearing officer. Subsection (b) authorizes the appellant to be represented by counsel and provides for the giving of notice of the hearing, the swearing of witnesses, the issuance of subpoenas duces tecum, and the recording of the entire proceedings by a competent shorthand reporter. Subsections (c) and (d) provide for the examination of witnesses and the introduction of other relevant evidence. Subsection (e) requires the hearing officer to prepare and file

with the board findings of fact and a proposed decision. The appellant may then present oral or written argument to the board, which, after considering same, shall prepare its own findings of fact and decision.

Pursuant to article III, section 8, of the bylaws of the medical staff, a physician whose application for appointment to the medical staff has resulted in a "rejection" or "deferral" decision by the board of directors of the hospital district may forward a written request for appeal to the secretary of the medical staff. If such request is not made within 30 days of notification by the administrator, the board's decision will stand. Where an appeal is taken, it will be considered under article VII, section 2, subsection A, paragraph 6, of the bylaws of the medical staff, which provides as follows: "The Executive Committee [of the medical staff] in accordance with these Bylaws, and Rules and Regulations, shall govern, control and administer all matters affecting professional practice, policy and practice of the Concord Community Hospital Medical Staff. The Executive Committee shall have the powers and duties specified by these Bylaws, except for matters expressly in these Bylaws, Rules and Regulations vested in entire Medical Staff or the Governing Board; shall have full and complete control in all matters of professional policy, procedure, practice, and conduct affecting the Medical Staff or members thereof. The Executive Committee may enforce compliance with these Bylaws, Rules and Regulations in such manner as it deems appropriate, including the temporary suspension or withdrawal of hospital and/or surgical privileges, in whole or in part, for such period or periods as the Executive Committee deems proper."

On February 11, 1964, the trial court filed a "Memorandum of Decision" finding that plaintiff had failed to exhaust the administrative remedies provided for in the bylaws of the hospital district and the medical staff, and ordering that the writ of mandate and preliminary injunction prayed for be denied. The court expressly declined to determine the validity of the examination requirement, but noted that "A strong and perhaps persuasive argument can be made that the provision [of the medical staff bylaws] . . . authorizing the applicant to be given such tests, oral and written, as the Credentials Committee shall in its discretion determine, is too general, vague and indefinite to establish a proper standard."

Although the parties do not raise the point, it may be noted at the outset that a trial judge's informal opinion

or decision normally does not constitute an appealable judgment or order. (3 Witkin, Cal. Procedure, Judgment, § 2, pp. 1872-1873.) However, since no particular language is requisite for an order, a trial judge's written statement of his views on the law and the proper decision may be treated as an order when it is signed and filed and when it constitutes his final judicial determination on the merits. (3 Witkin, Cal. Procedure, Judgment, § 2, p. 1873, § 12, p. 1888; *Maxwell* v. *Perkins* (1953) 116 Cal.App.2d 752, 756-758 [255 P.2d 10].)

In the instant case, the court's ''Memorandum of Decision'' indicates that it was intended to be a ruling, for it closes with the words, ''Plaintiff's application for a Peremptory Writ of Mandate and for Preliminary Injunction is denied,'' and was signed and filed. We hold it to be an appealable order or judgment.

Appellant's first contention is that the court erred in finding that he had failed to exhaust his administrative remedies prior to commencing the instant action.

The California rule is that a party must exhaust his administrative remedies prior to seeking relief in the courts. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] ; *Alexander* v. *State Personnel Board* (1943) 22 Cal.2d 198 [137 P.2d 433].) However, this rule has no application in a situation where an administrative remedy is unavailable or inadequate. (2 Cal.Jur.2d, Administrative Law, § 185, p. 308; *Bernstein* v. *Smutz* (1947) 83 Cal. App.2d 108, 114-115 [188 P.2d 48] ; *Henry George School of Social Science* v. *San Diego Unified School Dist.* (1960) 183 Cal.App.2d 82, 85 [6 Cal.Rptr. 661] ; *Larwood Co.* v. *San Diego Fed. Sav. & Loan Assn.* (1960) 185 Cal.App.2d 450, 456 [8 Cal.Rptr. 362].)

In our case, it is apparent that the hearing procedure provided for in the bylaws of the hospital district was not available to appellant because his application was ''deferred'' rather than ''rejected or denied.'' Respondents make no argument to the contrary, and assert only that article III, section 8, of the bylaws of the medical staff ''offers ample opportunity for review.'' This contention finds no support in the law.

In *Wyatt* v. *Tahoe Forest Hospital Dist.* (1959) 174 Cal. App.2d 709, 715-716 [345 P.2d 93], the court held that an applicant for admission to the medical staff of a public hospital was entitled to a hearing to determine whether or not his qualifications met the requirements established by law.

Although article III, section 8, of the bylaws of the medical staff does authorize the filing of a request for appeal by a physician whose application has been deferred, said section does not set forth any procedure for the hearing or determination of the appeal and states only that it shall be ''considered'' under article VII, section 2, subsection A, paragraph 6. The paragraph referred to, as we have seen, is similarly devoid of any mention of the procedure to be followed in reviewing an appeal from a deferral decision and merely enumerates in extremely broad language the powers and duties of the executive committee of the medical staff. It thus appears that a physician whose application for staff membership has been deferred has no assurance that he will be afforded a hearing or any of the other procedural safeguards which the bylaws of the hospital district guarantee to a physican whose application has been rejected or denied. He is entitled only to file a request for appeal which will be disposed of in an unspecified manner by the executive committee of the medical staff. This nebulous procedure cannot be deemed an adequate procedural remedy, hence appellant's failure to pursue the same may not be held a bar to the commencement of this action.

Appellant next contends that the examination requirement was invalid because it was in excess of the authority of the hospital district and was vague, ambiguous and uncertain. The trial court expressly declined to pass upon the validity of the examination requirement and based its decision solely upon the ground that appellant had failed to exhaust his administrative remedies. It is settled that where a trial court specifically states that it is not determining an issue which depends upon conflicting evidence, the judgment or order appealed from may not be affirmed upon the basis of that issue and the cause must be remanded to the trial court. (*Kyne* v. *Kyne* (1943) 60 Cal.App.2d 326, 332-334 [140 P.2d 886]; *Smith* v. *Fetterhoff* (1956) 140 Cal.App.2d 471, 473-475 [295 P.2d 474].) However, such disposition need not be made here, for the facts being without dispute, the validity of the examination requirement presents a pure question of law.

Appellant's contention that the examination requirement was in excess of the authority of the hospital district is based upon the assertion that Health and Safety Code, section 32128, which empowers hospital districts to establish certain rules, does not specifically authorize such a requirement. Appellant also argues that the state preempted the field by enacting the State Medical Practice Act (Bus. & Prof. Code, § 2000 et

seq.) and that a hospital district was thereby precluded from imposing any requirement in addition to those of the state. Neither point is meritorious.

█ Health and Safety Code, section 32128, subdivision 2, provides that the rules of the hospital established by the board of directors of the hospital district shall include ''Provision that membership on the medical staff shall be restricted to physicians and surgeons competent in their respective fields, worthy in character and in professional ethics, . . .'' Since the section does not undertake to specify the precise manner for determining a physician's competence in his particular field, it is apparent that the Legislature deemed this a matter within the discretion of the hospital district. It clearly cannot be said that the giving of an examination constitutes an unreasonable method of determining a physician's competence.

█ Appellant's contention that the state preempted the field by enacting the State Medical Practice Act is also without merit. In *Wyatt* v. *Tahoe Forest Hospital Dist., supra,* at pages 712-714, the court held that a physician and surgeon licensed by the state had no right per se to practice in a public hospital, but was required to comply with whatever reasonable rules and regulations had been adopted by the hospital district pursuant to Health and Safety Code, section 32128.

█ The sole question remaining is whether appellant is correct in asserting that the particular examination requirement now before this court is invalid because vague, ambiguous and uncertain. Article III, section 5, subsection C, of the bylaws of the medical staff provides in relevant part as follows: ''The Credentials Committee shall conduct an investigation of the character, competence, ability, and reputation of the applicant in the profession, and shall examine his background, experience, and training to insure that the best possible care and professional skill be provided patients; and shall further examine the applicant's prior hospital staff experience, qualifications, temperament, and general suitability for staff practice to insure that the same is compatible with a coordinated and competent hospital staff. In this connection it shall be within the power and authority of this committee to conduct a hearing at which the applicant shall be examined orally and in writing, be given such tests, oral and written, as the Credentials Committee shall in its discretion determine.'' The only logical construction of the above-quoted provision is that it vests the credentials committee with a broad and virtually unfettered discretion to subject an

applicant to written and oral tests designed to explore every phase of his professional ability, training and experience, as well as his temperament and general suitability for staff practice.

In determining what tests to require of an applicant and, again, in determining whether an applicant has successfully passed whatever tests it may have required, the credentials committee has no standards to guide it except that it shall admit to staff membership physicians who will provide patients with "the best possible care and professional skill" and whose hospital staff experience, qualifications, temperament and general suitability for staff practice are "compatible with a co-ordinated and competent hospital staff."

In *Wyatt* v. *Tahoe Forest Hospital Dist., supra*, at page 715, the court held that a hospital district rule containing similar language was too vague and uncertain to be used as the basis for excluding an applicant from the medical staff. The court stated: "What is the best possible care and professional skill? Would it limit the practice of medicine in the Tahoe District Hospital to physicians and surgeons who are recognized authorities in their respective fields? . . . A hospital district in the exercise of its duty to prescribe reasonable rules and regulations must set up standards or qualifications for those who wish to serve in the hospital which are general but not arbitrary or discriminatory. These should be clear, not vague, ambiguous or uncertain. [Citation.] The rule enacted by the board of directors of respondent hospital does not meet this test and as such may not be used to exclude appellant."

In *Rosner* v. *Eden Township Hospital Dist.* (1962) 58 Cal.2d 592 [25 Cal.Rptr. 551, 375 P.2d 431], the court held that a medical staff bylaw requiring an applicant for membership to "be temperamentally and psychologically suited for co-operative staff hospital functions with other members of the Medical Staff and with other hospital personnel" (p. 596) was not authorized by Health and Safety Code, section 32128, and, in addition, was so vague and ambiguous as to provide a substantial danger of arbitrary discrimination in its application. In commenting upon the type of rule which a hospital district was authorized to establish under section 32128, the court stated: "The code section does not refer to general suitability for hospital practice as a condition to membership in a medical staff, and such a requirement does not come within the provision of subdivision 2 that physicians and surgeons must be 'competent in their respective fields.' The

quoted term refers only to the ability of doctors to perform the medical and surgical treatments and diagnoses in connection with which they seek to use the hospital; for example, whether a doctor seeking privileges with respect to thoracic surgery is competent to engage in such surgery. Subdivision 2 does not contain any language authorizing the board to adopt standards of fitness in addition to those enumerated therein.'' (P. 597.)

In the instant case, it is apparent that the examination requirement set forth in the medical staff bylaws contains no such limitation and authorizes the credentials committee to require that an applicant take tests covering far more than his competence in his own particular field of medicine. It is equally apparent that the examination requirement is couched in such vague and ambiguous language as to furnish the committee with no adequate standards for applying said requirement.

The judgment is reversed, with directions to the trial court to issue its order compelling respondents to set aside their order deferring appellant's application for membership to the medical staff, and to pass upon said application in the manner and in accordance with the intent and purpose of section 32128 of the Health and Safety Code, as stated in the quotation from the *Rosner* case, *supra,* allowing said respondents, however, a reasonable time, if they be so advised, to adopt such bylaws as to hearing, procedure and examination in accordance with the views herein expressed, or in the event no such bylaws be adopted, then to promptly grant or reject said application.

Agee, J., and Taylor, J., concurred.