[Civ. No. 37928. Second Dist., Div. Four. Jan. 21, 1972.]

LOS ANGELES FIRE & POLICE PROTECTIVE LEAGUE et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

## Counsel

Kurlander, Solomon & Hart, William A. Kurlander, Stephen Warren Solomon, Conrad Lee Klein and Ellis J. Horvitz for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, John A. Daly and Jack L. Wells, Assistant City Attorneys, and John B. Rice, Deputy City Attorney, for Defendants and Appellants.

## Opinion

**KINGSLEY, J.**—Plaintiff, League, sued in three counts on behalf of all uniformed police officers against the City of Los Angeles and Police Chief Davis to determine the rights of the police officers to compensatory pay including overtime for 45-minute lunch periods (known as "Code 7" time) under Los Angeles City Ordinance number 137,042.

A trial was had and the court found that "Code 7" time is on-duty time by reason of the restraints and obligations placed on uniformed police officers during that period and that the police officers were entitled to com-

pensation for 22½ minutes of their 45-minute lunch period. The city appeals from the entire judgment and plaintiffs appeal from that portion which denies compensation for the remaining 22½ minutes of "Code 7" time.

The Los Angeles Fire & Police Protective League is an employee organization as defined in the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) and it represents about 6,018 of the 6,076 members of the Los Angeles Police Department.

The salary ordinance for firemen and policemen, Ordinance No. 89,935, was amended by Ordinance No. 137,042, effective July 15, 1968. This amendment authorizes overtime compensation. Section (b) thereof defines regular hours for the police department as follows: "Each member of the Police Department shall work two hundred sixty-one (261) days in each calendar year. Said work days shall be scheduled at such time during each month as the Chief of Police shall direct. Each member of the Police Department shall have eleven (11) days off duty each calendar year with full pay in lieu of holidays, said days off duty shall be taken at such time during each month as the Chief of Police shall direct.

"Each member of the Police Department shall be in actual attendance on duty a minimum of eight (8) hours every day except as otherwise prescribed and such eight (8) hour period on duty shall constitute one (1) day for the purpose of computing days off, vacation, sick leave, holidays and Ordinance time for such members."

Section (c) entitled "Definition of Overtime—Police Department," defines overtime as follows: "1. Except as otherwise provided, all hours worked in excess of eight (8) hours per day or in excess of the total number of hours included in regularly scheduled duty days during a calendar month as specified in Section 19 of this Ordinance shall be considered overtime including the following:

"(1) Hours worked by a member when on a day off in lieu of a holiday."

Section 3 of Ordinance No. 137,042 amends subdivision (d) of section 20 of Ordinance No. 89,935 to read as follows: "(d) Limitation on Use of Overtime. Except as provided in (b) 1 (1), (b) 1 (2), (b) 1 (3),[1] and (c) 1 (1) above, use of overtime shall be limited to:

"(1) Purposes, the need for which could not be anticipated or scheduled

---

[1]Subdivision (b) of section 3 relates to the fire department and is not material to the issues on this appeal.

in advance, and which are essential in meeting the appropriate department's responsibilities; or

"(2) Unusual major events, the occurrence of which is not subject to the control of the department and for which supplemental police or fire protection has been determined to be necessary by the appropriate board of commissioners."

Section 4 determines the rate and method of compensation.

The provisions of Ordinance No. 89,935 were thereafter codified without substantive change as part of the Los Angeles Administrative Code, and the relevant provisions are sections 4.168-4.169. Section 4.168 provides that members shall be in attendance for an 8-hour work day except as otherwise prescribed, and the section is entitled "Regular Hours of Work." Section 4.169(c), entitled "Overtime," defines overtime and states "except as otherwise provided" all hours worked in excess of eight hours per day shall be considered overtime. Section 4.169(d) states that "except as provided in (b) 1 (1), (b) 1 (2), (b) 1 (3), and (c) 1 (1) above," use of overtime shall be limited to overtime purposes the need for which could not be anticipated or scheduled in advance, and to unusual major events, the occurrence of which is not subject to police department control. Section 4.169(e) provides for the rate[2] and method of compensation.

Effective July 15, 1968, the city council and mayor authorized overtime for 1968-1970. Plaintiff League requested overtime pay for meal periods by letter to the board of police commissioners on November 14, 1968. On the request of then Chief Reddin for an interpretation, the city attorney issued an opinion on January 20, 1969, that officers were not entitled to overtime pay for meal periods. On January 29, 1969, the police commissioners denied the League's request. On June 2, 1969, a single claim was filed on behalf of all officers, and again on June 11, 1969. These claims were denied.

The evidence at the trial showed that the police officers on whose behalf this action is brought regularly serve a daily tour of duty covering 8 hours and 45 minutes. The purpose of this is to provide a 45-minute period at the beginning of each shift during which time any necessary

---

[2]Ordinance No. 137,042 appears in the clerk's transcript at page 301. It has been transposed into Administrative Code sections 4.168 and 4.169 with certain typographical errors, including the following: In the Ordinance, subsection (c) refers back to section 19, which appears as section 4.168 of the code, but which is incorrectly referred to in subsection (c) as section 4.169.

briefing may be given before the previous shift ends its tour of duty.[3] The result is to have a 45-minute overlap, with the previous shift carrying on with its regular patrol or other duties while the incoming shift is being briefed, so that there is a continuous staffing in the field. The "Code 7" time is taken, at a time prescribed by supervising authority, during the eight hours which follow the briefing period. Since the 45-minute briefing period admittedly is "working" or "duty" time, the officers herein involved work a shift of 8 hours and 45 minutes if the "Code 7" time also is "working" or "duty" time.

The evidence also shows that, by regulation and administrative practice, the officer is subject to substantial control and limitation on his freedom of action during the "Code 7" time. The officers are subject to call by their superiors, they are required to respond to requests by citizens, they are required to respond to emergencies, they may not eat at home or at the home of a friend even with prior approval, the officers may not remove their guns or uniforms (except for hat and coat) when eating in a public place, they must inform "communications" where they are eating so they can be reached, and supervisory approval is required to take a meal out of their area. As above indicated, they may take their "Code 7" time only at a time approved by their superiors and not at any regularly scheduled time of day or night. Other restrictions exist.

## I

Defendants contend that this is not a proper class action because there is no community of interest between all members of the class as to questions of law and fact. Defendants argue that, because there are 19 separate distinct and identifiable sub-groups in the department, created by differing assignments and ranks, the community of interest is lacking. Class actions are predicated on an ascertainable class and a community of interest in law and fact. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732].) The requirement of a community of interest does not depend on an identical recovery (*Vasquez*

---

[3]Certain officers, with specialized duties, are not required to report for the early briefing time, but are on duty only for an eight-hour period. Since this brings them under other ordinance provisions above-quoted, they, in effect, receive pay for their meal periods.

It is argued that this constitutes an unconstitutional denial of equal protection. We disagree. There is no constitutional or legal requirement that all police officers receive the same compensation where differing duties dictate a pay differential. We cannot say that such justification does not exist within the Los Angeles Police Department.

v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964]), and there is a community of interest when each member can rely on adequate representation on equivalent facts and questions of law. (*Daar* v. *Yellow Cab Co., supra.*)

■ In the instant case, there are common issues of law and fact applicable to all members of the class. For example, all members are claiming overtime compensation for "Code 7" time under the same city ordinance, which presents a common question of law. Also, all members are claiming to be subject to many of the same restrictions and obligations during the "Code 7" mealtime period, which presents common questions of fact. The minor differences in sub-groups as to assignments and ranks in no way detract from or effect the above common issues of fact and law.[4] A class action was proper.

## II

■ Defendants claim the plaintiffs are guilty of laches in presenting their claim. However, even if defendants are correct that the defense of laches is available in the kind of action that is at bench, the trial court's findings that plaintiffs were not guilty of laches and that the city has not been prejudiced, are supported by substantial evidence. Laches consists of: (1) unreasonable delay and (2) acquiescence by or prejudice to the defendant. (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617].) " 'In determining what will constitute such unreasonable delay, regard will be had to circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant, or of other persons, have been prejudiced by such delay.' " (*Cahill* v. *Superior Court* (1904) 145 Cal. 42, 46 [78 P. 467].)

Plaintiffs prosecuted their action without unreasonable delay. The resolution authorizing overtime pay was passed in July 1968, and slightly less than four months later a letter was submitted requesting overtime pay. Two months later, on January 29th, the board of police commissioners denied the request. A single claim was filed on June 2, and a corrected one on June 10. The claim was refused on August 11, and suit was filed on September 8.

Defendants have not proven prejudice by the period of delay. Defend-

---

[4]Plaintiffs also assert that the city agreed to the filing of a single claim in order to relieve the administrative burden of 3,500 individual claims, and as such a class action was proper. In view of our finding that there is an ascertainable class, we need not decide the legal effect of this agreement.

ants' claim the prejudice resulted from the accrual of a claim of more than three million dollars in compensation funds. Whether the claims had been paid promptly on accrual, or whether they are paid in a lump sum after a judgment in a lawsuit, the money owed to the police officers would be approximately the same. Therefore, there is no showing of prejudice to defendants related to the delay.

## III

■ Defendants next contend that plaintiffs failed to exhaust their administrative remedies. Defendants claim that, under subdivision (g) of section 4.169 of the Los Angeles Administrative Code, and under Special Order 39, policemen had the duty of submitting overtime compensation reports to supervisors.

Although the individual policemen did not submit overtime reports, plaintiff League, on November 14, 1968, advised the board of police commissioners by a single letter that they should institute an eight-hour day. This letter put the city on notice that the individual officers were claiming overtime compensation just as clearly as if 3,500 officers had filed overtime reports individually. The trial court's finding that defendants were estopped from claiming that the individual policemen failed to file overtime reports was supported by substantial evidence. Defendants waived their rights to individual overtime reports by accepting the plaintiffs' November 14, 1968, letter, and by spending 2½ months before acting on it and rejecting it. ■ Questions of waiver and estoppel involve issues of fact for the trial court. (*Albers* v. *County of Los Angeles* (1965) 62 Cal. 2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].)

■ Additionally, we agree with plaintiffs' contention that there was no adequate administrative remedy. In all cases which have held that a party had not exhausted his administrative remedies, provision was made for a proceeding before an administrative body which the party had not pursued; general supervisory power does not constitute an administrative remedy. (*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559 [55 Cal.Rptr. 505, 421 P.2d 697].) In the instant case the mere submission of individual overtime reports to a supervisor without any remedy for the aggrieved person, does not in itself constitute an administrative remedy because there was no procedure for hearing and determining the request. (See *Martino* v. *Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51 [43 Cal.Rptr. 255].)[5]

---

[5]Plaintiffs claim there is no administrative remedy for class relief, citing *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93]. That

## IV

■ Defendants contend that, as a matter of law, policemen are not "working" during their meal period unless that period is actually interrupted by police business. We disagree. Two recent Supreme Court cases involving the Workmen's Compensation Act ruled that policemen were entitled to workmen's compensation while coming to work or returning from work, where they were required to wear a uniform, carry a gun, travel conspicuously on public streets and render assistance to members of the public. The court stated that the officers' conduct was reasonably directed toward the fulfillment of the employer's requirements and was performed for their benefit. (*Garzoli* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502 [86 Cal.Rptr. 1, 467 P.2d 833]; *Guest* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 670 [87 Cal.Rptr. 193, 470 P.2d 1].)

More specifically, cases interpreting the Fair Labor Standards Act, and cases involving public employment, have held that mealtime is on-duty time where security guards and other persons acting in a similar capacity were subject to restrictions and obligations similar to those of the officers in the case at bench. Thus, in the case of *Lindell* v. *General Electric Co.* (1954) 44 Wn.2d 386 [267 P.2d 709], plant guards for an atomic energy commission facility were entitled to pay for their lunch period where they were subject to be called by their supervisor at a moment's notice and were subject to other restrictions. In *Glenn L. Martin Nebraska Co.* v. *Culkin* (8th Cir. 1952) 197 F.2d 981, plant guards and firemen were entitled to overtime compensation for 30-minute "lunch periods" where they were not free to pursue matters of a purely private nature. The court said that, even though the guards and firemen were not regularly called upon to put down acts of violence or fires in the 30-minute period, they were serving in a standby capacity to a considerable extent, and were deprived of their freedom during the period involved.

Similarly, in the case before us now, police officers are not free to follow private pursuits during "Code 7" time, they are subject to numerous obligations and restrictions for the benefit of their employer during this period, including being called out by their supervisors at a moment's notice.[6] The

---

case refers specifically to the code sections involved and does not have a general application to the facts before us.

[6]The cases cited by the city (*Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123* (1944) 321 U.S. 590 [88 L.Ed. 949, 64 S.Ct. 698, 152 A.L.R. 1014]; *Armour & Co.* v. *Wantock* (1944) 323 U.S. 126 [89 L.Ed. 118, 65 S.Ct. 165]; *Skidmore* v. *Swift & Co.* (1944) 323 U.S. 134 [89 L.Ed. 124, 65 S.Ct. 161]), do not hold that mealtime, where employees are subject to numerous restrictions *and where* employees act in a standby capacity is non-compensable.

trial court's finding that the officers are working during their meal period is supported by substantial evidence.

Furthermore, since the officers were subject to restrictions and obligations during the entire 45-minute meal period, they were working for the entire 45 minutes and not merely 22½ minutes whether the entire period was spent in consuming a meal or directly on police business.

## V

██ Nevertheless, we believe the officers are not entitled to compensation for any part of their 45-minute lunch period under the wording of the existing statute. ██ Employees of a chartered city, such as the City of Los Angeles, are entitled to such pay, *and only to such pay,* as the city charter and ordinances enacted thereunder provide. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137].) ██ ██ It follows that, whatever the rights of the Los Angeles policemen to overtime pay had they been in private employment, their rights here are limited to those given to them by the ordinance above quoted. Section 4.169 of the Administrative Code provides that, "*Except as otherwise provided,*" (italics supplied) all hours worked by policemen in excess of an eight-hour day shall be considered overtime, and under subsection (e) compensated at the rate of time and one-half. Although the police are "working" over eight hours during their lunch period, subsection (d) of section 4.169 imposes specific limitations on the use of overtime pay. It provides that overtime shall be limited to "purposes, the need for which could not be anticipated or scheduled in advance," and "unusual major events, the occurrence of which is not subject to the control of the [police] department."

It is clear that mealtime periods are not "unusual major events." Plaintiffs claim that they cannot be "anticipated or scheduled in advance" within the meaning of subdivision (1) of subsection (d) above quoted. We disagree. While, as already noted, the exact time during the eight-hour field period cannot be determined in advance,[7] the fact that "Code 7" time will be taken sometime during the shift is anticipated and "scheduled" within the meaning of the ordinance.

In construing a statute the court should attempt to ascertain the intent

---

[7]This limitation is dictated by the obvious need to maintain some coverage of a post or area at all times. Therefore not all officers on a particular post or in a particular area may take "Code 7" time at once. It is also necessary to maintain some coordination between adjoining patrol areas for the same reason.

of the Legislature so as to effectuate the purpose of the law. (*People* v. *Superior Court* (1969) 70 Cal.2d 123 [74 Cal.Rptr. 294, 449 P.2d 230].) Reading section 4.169, subsection (d), and construing it in order to harmonize it with the entire statute of which it is a part (see *Stafford* v. *L. A. etc. Retirement Board* (1954) 42 Cal.2d 795, 799 [270 P.2d 12]; *J. T. Jenkins Co.* v. *County of Los Angeles* (1960) 178 Cal.App.2d 379, 383 [2 Cal.Rptr. 852]), we must conclude that subsection (d) sets a limit upon those situations in which overtime pay is permissible. Even construing the limitation narrowly, as we are bound to do (*People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 543 [72 Cal.Rptr. 790, 446 P.2d 790]), we must conclude that daily meals do not fall into a category of overtime that is compensable.

Nor are plaintiffs' arguments that section 4.169, subsection (d), is directory rather than mandatory, convincing. Plaintiffs put forth little in the way of reasons for their view that the provisions are directory and the wording of the statute provides clear limitations on the use of overtime pay.

Plaintiffs argue that if the policemen are working overtime in the 45-minute lunch period, but that such type of overtime is not compensable under the ordinance, the result is unjust and inequitable, since the city is deriving free work. If that is true, it is for the Legislature to remedy the situation. We are not free to read into a statute an interpretation that is strained and contrived.[8]

The judgment is reversed in its entirety. Neither party shall recover costs in this court.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for rehearing was denied on Feb. 9, 1972, and the following opinion was then rendered:

**THE COURT.**—By a petition for rehearing, plaintiffs argue that the judgment and writ issued below, commanding the defendants ". . . to include the meal period, also known as 'Code 7' time . . . in their normal eight-

---

[8]As we understand them, plaintiffs argue that the ordinance authorizes the chief of police to order a tour of duty in excess of eight hours only on the conditions set forth in subdivision (d) (except for attendance in court) and that, unless we are to hold that he is violating the ordinance in setting up the overlapping shifts described, he is necessarily construing "Code 7" time as being unanticipated and unscheduled time. The conclusion does not follow. If the chief is compelling duty attendance in violation of the ordinance, the remedy is to restrain that action, not to impose on the public purse a burden not contemplated by the council.

hour day, or if not so included, to make overtime cash payments to them for said time, or give them time off from work with pay, excluding from compensation the actual time spent in consuming their meal," granted them a form of relief to which footnote 8 of our opinion herein held them to be entitled.

(1) The footnote referred to did not decide the right of plaintiffs to a writ of mandate which did not include the alternative of overtime compensation. The arguments to us touched only tangentially on the interpretation of the last paragraph of section 4.168(b)(1) and we intended no more than the indication that a litigable issue over the interpretation of that language existed.

(2) We cannot, on this record, sustain and affirm part of what was a unitary mandate while, at the same time, reversing another portion of the same unified order.

(3) Our reversal of the judgment sends the cause back for whatever additional proceedings the parties and the trial court may deem proper. Nothing in our opinion or judgment would prevent a retrial directed to the particular issue now urged on us.

A petition for a rehearing was denied February 9, 1972, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied March 16, 1972. Peters, J., was of the opinion that the petition should be granted.