13 Cal.Rptr.3d 725 (2004)
118 Cal.App.4th 1320
Ronald PRINCE et al., Plaintiffs and Appellants,
v.
CLS TRANSPORTATION, INC., et al., Defendants and Respondents.
No. B164066.
Court of Appeal, Second District, Division One.
May 26, 2004.
Review Denied August 11, 2004.[*]
*726 Law Office of David A. Mallen, David A. Mallen, Los Angeles; Law Offices of David W. Affeld, David W. Affeld, Los Angeles; Pope, Berger & Williams, Harvey C. Berger and Timothy G. Williams, San Diego, for Plaintiffs and Appellants.
Littler Mendelson, Robert F. Millman, Douglas A. Wickham and Fermin H. Llaguno, Los Angeles, for Defendants and Respondents.
VOGEL, J.
Ronald Prince, Thomasina Lawrence, and Michael L. Gleaton filed a class action complaint against CLS Transportation, Inc., Charles Horky, and Marcy Horky to recover allegedly unpaid wages.[1] CLS demurred on the ground that this is "not an appropriate class action," contending there is no well-defined community of interest, and that a class action is not superior to other methods of adjudicating these particular claims. Over Prince's opposition, the trial court sustained the demurrer "without leave to amend the class action allegations," noting that the case would proceed with the named plaintiffs. Prince appeals.[2] We conclude that, in this context, class suitability should not have been determined at the pleading stage, and that the order thus must be reversed.

FACTS

The Complaint
This is a wage and hour class action brought by Prince for himself and on behalf of more than 500 drivers who are or were employed by CLS. The complaint alleges that "[t]his action involves common questions of law and fact ... because [it] focuses on [CLS's] systematic course of illegal payroll practices and policies throughout the State of California, which was applied to all drivers ... and others similarly situated in violation of the California Industrial Welfare Commission Wage Orders, the California Labor Code, and the California Business and Professions Code...." Prince alleges that his claims are typical of the proposed class, and that he is able to fairly and adequately protect their interests. In eight causes of action, he alleges a variety of wage law violations, including CLS's alleged failure to pay overtime compensation, to pay compensation for all hours worked, to reimburse the drivers for certain expenses, to provide required meal and rest periods, to provide itemized wage statements, to pay its former employees all wages due at the time of discharge  and, with regard to all of these things, that CLS acted in violation of the Unfair Business Practices Act (Bus. & Prof.Code, § 17200 et seq.).
*727 The gist of the action, according to Prince, "is that CLS paid its drivers only for the time they were on driving assignments rather than for the full duration of their shifts. CLS did not pay its drivers for the time they spent waiting between driving assignments, after a drop off and before the next pickup. CLS also required its drivers to arrive at least thirty minutes before a scheduled pickup, but did not consider that time as hours worked. CLS also improperly calculated the wage rates of its drivers under the `total remuneration' rule for purposes of determining overtime wages[, and] also withheld gratuities intended for its drivers. In doing these things, CLS also failed to [accurately] record hours worked ... as required by California law."[3]

The Demurrer
CLS demurred, contending Prince could not establish a well-defined community of interest among the potential class members, and that class treatment is not a superior method of adjudicating this matter. According to CLS, the right to recover the allegedly unpaid wages and allegedly withheld benefits must be determined individually, not as a class, and an effort to address these claims through a class action would burden the court without benefiting the potential class members. In his opposition, Prince characterized the demurrer as "nothing more than an improper preemptive `opposition brief' to a future motion for class certification," and contended that a class action is not inappropriate simply because each member of the potential class may at some point be required to individually establish eligibility and damages.

The Trial Court's Ruling
As noted at the outset, the trial court sustained the demurrer without leave to amend the class action allegations, permitted the action to proceed with regard to Prince and the other named plaintiffs, and explained its ruling this way:
"The Court determines ... there is no reasonable possibility that [Prince] can plead a prima facie community of interests among the class members except the same employer and legal bases as pled in the Complaint, [because] `the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him....' (Silva v. Block (1996) 49 Cal.App.4th 345, 350 [56 Cal.Rptr.2d 613].) All of [Prince's] claims would require highly individualized determinations of each potential class member's right to recover for actual work performed, waiting time, stand-by time, overtime compensation, meal and rest periods, gratuities, expenses incurred in the course and scope of employment.
"Additionally, the Court finds ... the class action is not the most efficient and effective means of settling the controversy. In this case a `speedy, informal, affordable' alternative is available with the Labor Commissioner. (Cuadra v. Millan (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704].)"
This appeal followed.

DISCUSSION

I.
"Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system.... By establishing a technique *728 whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress.... Generally, a class suit is appropriate when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.... But because group action also has the potential to create injustice, trial courts are required to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts....
"Section 382 of the Code of Civil Procedure authorizes class suits in California when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members.... The community of interest requirement involves three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.... Other relevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing...." (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 434-435, 97 Cal.Rptr.2d 179, 2 P.3d 27, all citations and all internal quotation marks omitted.)

II.
There are two lines of facially inconsistent cases relevant to the issue before us but the inconsistency evaporates when the facts of the cases are considered, at which point it becomes apparent that it is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage. In other cases, particularly those involving wage and hour claims, class suitability should not be determined by demurrer.[4]

A.
In Vasquez v. Superior Court (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964, a consumer class action alleging that fraudulent misrepresentations were made with regard to contracts for the purchase of frozen foods and freezers, the Supreme Court reversed an order sustaining a demurrer to the class action allegations. In rejecting the defendant's claim that individual issues of fact would predominate, the Court found the contention "unpersuasive at the pleading stage of the proceedings because we cannot assume that plaintiffs will be unable to establish their allegations without the separate testimony of each class member; at least they must be afforded the opportunity to show that they can prove their allegations on a common basis.... [¶] ... [¶] ... [¶] ... For the purpose of determining if the demurrers should have been overruled, it is sufficient that there is a reasonable possibility plaintiffs can establish a prima facie community of interest among the class members on the false representation issue. *729 Plaintiffs' inability to do so, if that be the ultimate result, can be determined at a later stage of the proceeding." (Id. at p. 813, 94 Cal.Rptr. 796, 484 P.2d 964.)[5]
Beckstead v. Superior Court (1971) 21 Cal.App.3d 780, 98 Cal.Rptr. 779, a restraint of trade case typical of the post-pleading perspective, reversed an order sustaining a demurrer to class action allegations and explained its reasoning this way: "Daar, Jones, Vasquez, and La Sala represent California's judicial policy of allowing potential class action plaintiffs to have their action measured on its merits to determine whether trying their suits as a class action would bestow the requisite benefits upon the litigants and the judicial process to justify class action litigation. In order to effect this judicial policy, the California Supreme Court has mandated that a candidate complaint for class action consideration, if at all possible, be allowed to survive the pleading stages of litigation. The wisdom of allowing survival is elementary. Class action litigation is proper whenever it may be determined that it is more beneficial to the litigants and to the judicial process to try a suit in one action rather than in several actions. To make this determination, it is necessary to balance the benefits of trying a particular suit as a class action, against the concomitant burdens.
"It is clear that the more intimate the judge becomes with the character of the action, the more intelligently he may make the determination. If the judicial machinery encourages the decision to be made at the pleading stages and the judge decides against class litigation, he divests the court of the power to later alter that decision. However, if the decision is ... deferred past the pleading stage, ... the balancing will be more precise. Since it is both the litigants and the judicial process who are the beneficiaries of a wise decision, the overriding interest of all affected is to allow the judge as much insight into the case as possible in making his determination.
"Therefore, because the sustaining of demurrers without leave to amend represents the earliest possible determination of the propriety of class action litigation, it should be looked upon with disfavor. This is not to say that sustaining demurrers to class action complaints without leave to amend is always improper. Conceptually, we suppose that any `class action' complaint at the pleading stage is possible of being amended so as to plead a class action which will survive demurrer, but we also recognize that certain factual situations may negate such a possibility. It is in such factual situations that sustaining demurrers without leave to amend is proper. However, absent such strong factual showings, all that is normally required for a complaint to survive demurrers to the propriety of class litigation is that the complaint allege facts that tend to show: (1) an ascertainable class of plaintiffs, and (2) questions of law and fact which are common to the class. If the complaint is allowed to survive the demurrer, then the judge may proceed with the suit, deferring his determination of the propriety of class action until a time when he may better make the decision." (Beckstead v. Superior *730 Court, supra, 21 Cal.App.3d at pp. 783-784, 98 Cal.Rptr. 779, paragraphing added, fn. omitted.)[6]
Other courts have reached similar results. (E.g., Wilner v. Sunset Life Ins. Co., supra, 78 Cal.App.4th 952, 93 Cal.Rptr.2d 413 [in which we reversed an order sustaining a demurrer to class action allegations in a fraud suit against an insurer]; Central Valley Chap. 7th Step Foundation v. Younger (1979) 95 Cal.App.3d 212, 157 Cal.Rptr. 117 [reversing demurrer dismissal of class action claiming a public employer, authorized by law to receive criminal offender record information but prohibited by law from considering a record of an arrest which did not result in a conviction, should not receive records containing arrests that did not result in convictions]; see also Canon U.S.A., Inc. v. Superior Court (1998) 68 Cal.App.4th 1, 5, 79 Cal.Rptr.2d 897; TJX Companies, Inc. v. Superior Court (2001) 87 Cal.App.4th 747, 752-754, 104 Cal.Rptr.2d 810.)

B.
Silva v. Block, supra, 49 Cal.App.4th 345, 56 Cal.Rptr.2d 613, the cornerstone of CLS's argument (and the case relied on by the trial court), was a class action in which the proposed class consisted "of people wrongly and unjustifiably attacked by police dogs used by the Sheriff's Department," plus "a minority subclass comprised of all individuals belonging to racial minorities who had suffered such attacks." (Id. at p. 348, 56 Cal.Rptr.2d 613.) Not surprisingly, Division Two of our court held that the trial court had properly determined the class issues on demurrer  since it was apparent from the face of the pleading that issues requiring separate adjudication  both of liability and damages  predominated over common questions. (Id. at p. 351, 56 Cal.Rptr.2d 613.) As the court noted, "[t]he question of liability to individual class members would depend upon the particular conduct in which the suspect was engaged and the facts apparent to the handler before the police dog was employed. [Citations.] In addition to liability, damages would also be subject to a case-by-case determination." (Id. at p. 352, 56 Cal.Rptr.2d 613.)
Other courts that have approved the use of demurrers to determine the propriety of class actions have done so in similar circumstances. (E.g., Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1233-1234, 271 Cal.Rptr. 72 [proposed class consisted of handicapped students who had allegedly been abused, beaten, and publicly humiliated, so that the separate issues "in this mass-tort action" were "overwhelmingly numerous and substantial when compared to the few issues" common to the class]; Brown v. Regents of University of California (1984) *731 151 Cal.App. 3d 982, 198 Cal.Rptr. 916 [determination of class status by demurrer proper in mass-tort action where proposed class consisted of persons allegedly injured by hospital's failure to provide adequate coronary care]; McCullah v. Southern Cal. Gas. Co. (2000) 82 Cal.App.4th 495, 98 Cal.Rptr.2d 208 [determination of class status by demurrer proper where proposed class consisted of former employees of the Gas Company who became disabled in the course of their employment and were allegedly eligible to be rehired but were not]; Kennedy v. Baxter Healthcare Corp. (1996) 43 Cal.App.4th 799, 50 Cal.Rptr.2d 736 [another mass tort action].)

C.
Significantly, wage and hour disputes (and others in the same general class) routinely proceed as class actions.[7]Rose v. City of Hayward (1981) 126 Cal.App.3d 926, 179 Cal.Rptr. 287, where the proposed class consisted of retired employees and the survivors of deceased employees, is typical. As the court put it, "[t]he one decisive issue pervading the litigation, whether the class members have been wrongfully deprived of pension benefits by an improper method of computation, will not be decided on the basis of facts peculiar to each class member, but rather, on the basis of a single set of facts applicable to all members. Thus, [the] action involves only one claim which turns on only one question of law common to all class members. Consolidation in a class action thereby creates substantial benefits for both the parties and the courts in that class action disposition averts the unnecessary risk of numerous and repetitive administrative and judicial proceedings with the attendant possibility of inconsistent adjudication." (Id. at p. 933, 179 Cal.Rptr. 287.)
Other courts have reached the same result in wage and hour cases. (E.g., Madera Police Officers Assn. v. City of Madera (1984) 36 Cal.3d 403, 204 Cal.Rptr. 422, 682 P.2d 1087 [class action proper for police officers seeking payment of overtime wages, an accounting, and declaratory relief]; Morillion v. Royal Packing Co. (2000) 22 Cal.4th 575, 579, 94 Cal.Rptr.2d 3, 995 P.2d 139 [class action proper for past and present agricultural employees claiming they were entitled to compensation for time spent to and from employer's fields]; Bell v. Farmers Ins. Exchange (2001) 87 Cal.App.4th 805, 105 Cal.Rptr.2d 59 [class action proper to recover for alleged nonpayment of overtime compensation]; Parris v. Superior Court (2003) 109 Cal.App.4th 285, 135 Cal.Rptr.2d 90 [class action proper by group of employees alleging violations of state wage and hour laws regarding overtime compensation].)

D.
As noted at the outset, our decision that class action suitability should not have been decided at the pleading stage temporarily moots the issues about whether this particular action is a suitable class action. We nevertheless mention two points simply because they illustrate the problems inherent in premature resolution of the class suitability issue.
Based on the allegations of Prince's complaint, the trial court's finding that individual issues predominate is simply wrong. Prince alleges institutional practices by CLS that affected all of the members of the potential class in the same manner, and it appears from the complaint *732 that all liability issues can be determined on a class-wide basis. At this stage, no more is required. (Rose v. City of Hayward, supra, 126 Cal.App.3d at pp. 933-934, 179 Cal.Rptr. 287 [while the amount of individual claims may vary from class member to class member, the introduction of that variable into the equation in no way alters the rule that "each class member may establish damages independently without threatening the integrity of the class action"]; see also Daar v. Yellow Cab Co., supra, 67 Cal.2d at p. 709, 63 Cal.Rptr. 724, 433 P.2d 732; Vasquez v. Superior Court, supra, 4 Cal.3d at p. 815, 94 Cal.Rptr. 796, 484 P.2d 964; Spoon v. Superior Court (1982) 130 Cal.App.3d 735, 745, 182 Cal.Rptr. 44; Los Angeles Fire & Police Protective League v. City of Los Angeles (1972) 23 Cal.App.3d 67, 73-74, 99 Cal.Rptr. 908.)
The trial court's other finding  that "the class action is not the most efficient and effective means of settling the controversy [because] a `speedy, informal, affordable' alternative is available with the Labor Commissioner"  is also wrong. The case relied on by the trial court, Cuadra v. Millan, supra, 17 Cal.4th 855, 72 Cal.Rptr.2d 687, 952 P.2d 704, was not a class action; it reached the Supreme Court after the trial court granted a petition for a writ of mandate in which three workers had challenged the Labor Commissioner's back pay calculations. In that context, the Supreme Court noted that an employee seeking unpaid wages "has two principal options. The employee may seek judicial relief by filing an ordinary civil action against the employer [or] seek administrative relief by filing a wage claim with the commissioner [using a] hearing procedure ... designed to provide a speedy, informal, and affordable method of resolving wage claims." (Id. at p. 858, 72 Cal.Rptr.2d 687, 952 P.2d 704, italics in original, fn. omitted.) Since there were only three named plaintiffs in Cuadra, that case adds nothing to the class action suitability analysis. More to the point, the wage cases discussed in Part C., ante, illustrate the propriety of a class action where, as here, the claims affect a large group of people  and also show that class allegations cannot be dismissed out of hand simply because the plaintiffs might each have other remedies before the Labor Commissioner.
For all of these reasons, the demurrer should have been overruled.

DISPOSITION
The order sustaining the demurrer to the class action allegations without leave to amend is reversed, and the cause is remanded to the trial court with directions to enter a new order overruling the demurrer in its entirety and directing CLS to answer. Prince is awarded his costs of appeal.
We concur: SPENCER, P.J., and MALLANO, J.
NOTES
[*] Brown, J., dissented.
[1] Unless noted otherwise, our references to Prince include Lawrence and Gleaton, and our references to CLS include Charles Horky and Marcy Horky.
[2] Whatever its form, an order that has the effect of denying certification as a class action disposes of that action and is an appealable final judgment. (Morrissey v. City and County of San Francisco (1977) 75 Cal.App.3d 903, 907, 142 Cal.Rptr. 527; Guenter v. Lomas & Nettleton Co. (1983) 140 Cal.App.3d 460, 464, 189 Cal.Rptr. 470; Wilner v. Sunset Life Ins. Co. (2000) 78 Cal.App.4th 952, 957, fn. 1, 93 Cal.Rptr.2d 413 [an order sustaining a demurrer to class action allegations without leave to amend "is appealable to the extent that it prevents further proceedings as a class action"]; and see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2003) ¶ 2.39 et seq.)
[3] There are detailed allegations about the size of the potential class, the common questions of law and fact, and the similarity of the named plaintiffs' claims with those of the members of the potential class.
[4] Our resolution of this appeal on this basis makes it unnecessary to consider the other issues raised by the parties.
[5] In three major class actions decided just before and soon after Vasquez, the Supreme Court reversed orders sustaining demurrers to class action allegations. (La Sala v. American Sav. & Loan Assn. (1971) 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113; Jones v. H.F. Ahmanson & Co. (1969) 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464; Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732; see also Collins v. Rocha (1972) 7 Cal.3d 232, 102 Cal.Rptr. 1, 497 P.2d 225 [reversing an order sustaining a demurrer without leave to amend to a class action for fraud in the hiring of employees].)
[6] In a footnote to the quoted test, Beckstead cites Diamond v. General Motors Corp. (1971) 20 Cal.App.3d 374, 97 Cal.Rptr. 639, as "a case in which we believe that demurrers were properly sustained without leave to amend...." (Beckstead v. Superior Court, supra, 21 Cal.App.3d at p. 784, fn. 2, 98 Cal.Rptr. 779.) Diamond was a purported class action brought by a Los Angeles resident in which he sought damages and injunctive relief to stop 293 industrial corporations and others from polluting the atmosphere of the county. (Diamond v. General Motors Corp., supra, 20 Cal.App.3d at p. 376, 97 Cal.Rptr. 639.) The trial court sustained demurrers to the entire complaint without leave to amend, but without prejudice to any named plaintiff filing suit for specific injuries; the Court of Appeal affirmed, rejecting the complaint as a plain attempt to deal with the problem of air pollution in Los Angeles County as a whole, and finding there were significantly disparate interests within the alleged class, and that the right to recover as well as the amount of recovery would differ substantially from one resident to another. It was not a close case. (Id. at pp. 377-378, 97 Cal.Rptr. 639.)
[7] In the cases discussed in this section, class suitability issues were decided after the pleading stage.